Adams *vs.* Lamar.

No. 14.—BENNETT ADAMS, plaintiff in error, *vs.* GAZAWAY B. LAMAR, defendant.

```
  8   83
104  701
      8   83
    f127 638
      8   83
    f130 612
```

[1.] The jurisdiction of the Courts of this State is co-extensive with its sovereignty, and that is limited only by its territory, and it therefore attaches upon all the property and persons within the limits of the State; yet it is to be so exercised as to conclude by judgment none but those who are parties.

[2.] The Courts of this State have no extra territorial jurisdiction, and cannot make the citizens of foreign States amenable to their processes, or conclude them, by a judgment, *in personam*, without their consent.

[3.] A foreign citizen may waive his exemption, and submit to the jurisdiction; and in that event, he will be concluded by the judgment.

[4.] A files his bill against B, who is a citizen of New York—setting forth an agreement, by which B stipulated to give to A one-third of certain lands, to which B holds the legal titles, in consideration of services rendered, and information furnished to B by A, relative to the lands, and which was the inducement of B's purchase of them—and asks an assignment to A of the one-third of the lands, and a conveyance of titles to the same, by B to A— service of the bill being perfected on B's agent in this State: *Held*, that upon this bill, a Court of Chancery could not decree against B, because of the want of jurisdiction over him, a citizen of a foreign State.

[5.] When a foreign citizen appears, and by counsel pleads to the jurisdiction, he is not held to have waived his exemption by appearance. Appearance and pleading or answering to the merits, held to be a waiver of his exemption, and an assent to the jurisdiction.

Application for injunction, Baker Superior Court. Before Judge WARREN, at Chambers, December, 1849.

Adams *vs.* Lamar.

The decision complained of in this case, is the refusal of the Court to grant an injunction. The bill was filed by Bennett Adams, alleging, that in 1839, complainant and one John T. Lamar entered into an agreement and partnership, to purchase and grant some of the lots of land in Baker, Early and Decatur counties, which had reverted to the State. It was agreed that Adams should examine the lots, and report to Lamar such as were valuable, at his own expense; and Lamar was to pay the grant fees into the treasury, and take out the grants in his own name; Adams, for his trouble, having an interest of one-third in the lots thus granted, or one-third of the actual value of the land, as he might choose. The bill charged that, at great expense, Adams proceeded to examine the lands, and reported to said John T. Lamar, about *eighty* lots of great value; that said John T. being unable to pay the grant fees, Gazaway B. Lamar stepped into his place, and advanced the money—taking out the grants in his own name, and agreeing to account to Adams, on the same terms as provided in the original agreement with John T. Lamar. The bill farther alleged, that John T. Lamar was dead, and Gazaway B. Lamar resided without the State of Georgia; that said Gazaway had advertised all of these lands for sale, at public outcry, at Milledgeville, on the first of December, 1849; that the complainant elected to take the one-third interest in the lands, and that the sale by Lamar would greatly injure the complainant; that the complainant desired to have the land admeasured, and one-third part assigned to him, and that Lamar be compelled, after such assignment, to convey the same to him. The prayer of the bill was for a partition of the lands, and an injunction restraining Lamar from selling the same.

The Court granted an order, appointing a day for the hearing of the application, and, in the meanwhile, ordered a copy to be served on the agent of Lamar in Georgia, and publication of the application in a public gazette.

On the hearing of the application, Lamar appeared, by his solicitor, and showed cause why the injunction should not be granted; among other grounds, because the Court in Baker County had no jurisdiction over the defendant, who, by the bill, was shown to reside out of the State.

The Court sustained this objection and refused to grant the injunction, and complainant excepted.

Adams *vs.* Lamar.

R. F. Lyon, for plaintiff in error, cited—

*Dearing vs. The Bank of Charleston*, 5 *Ga. Rep.* 503. Story's *Eq. Jur.* §§486, 487, 489, 646, 658.   1 *Atkyns*, 544.   1 *Ves.* 203. 2 *Paige's R.* 402.   5 *Ga. Rep.* 341.

E. H. Platt and Chappell, for defendant in error, cited—

2 *Story's Equity Jurisprudence*, §§743, 1291.   1 *Kent*, 343. 3 *Story on Const.* §§1631. 1684 *to* 1686, '89, '9, 1293.   *Penn vs. Lord Baltimore*, 1 *Ves. Sr.* 447.   *Earl of Kildare vs. Eustice*, 1 *Vernon*, 421.   *Toller vs. Carteret*, 2 *Vernon*, 494.   *Massie vs. Watts*, 2 *Cond. Rep.* 332.   *Cranston vs. Johnson*, 3 *Ves. Jr. top page*, 182.   *Jackson vs. Petrie*, 10 *Ves. top page*, 164.   *Mead vs. Merrit*, 2 *Paige*, 404.   *Mitchell vs. Bunch, Ib.* 614.   *Stephen vs. Fowler*, 9 *Paige*, 280.   *Bissell vs. Briggs*, 9 *Mass. Rep.* 468. *Pawling vs. Ex'rs of Bird*, 13 *Johnson, top page*, 207.   6 *Wend.* 452.   5 *Ga. Rep.* 519.   *Mays & Shivers vs. Taylor*, 7 *Ga. Rep.* 242.

*By the Court.*—Nisbet, J. delivering the opinion.

Whether the Court below erred in dissolving this injunction, depends upon the character of the case made in the bill.   To determine its character, we are to look to the bill itself—to its allegations and its prayer.   It appears, then, from the statements in the bill, that an agreement was entered into, between the complainant and one John T. Lamar, then of the County of Bibb, and now deceased, for the granting of lands which, by Act of the Legislature, were declared forfeited, and which were authorized to be granted to any person who might come forward, after a time limited, and pay into the State treasury the grant fees.   By that agreement it was stipulated, that the complainant should, at his own expense, explore the country, examine the lands, and report to John T. Lamar, such lots as he might believe valuable and desirable to be granted, for speculation.   It was farther stipulated, that John T. Lamar should, on his part, grant the lands and pay the office fees; and farther, that in consideration of the services so to be rendered by the complainant, the parties stipulated, that

he should have *one-third interest* in all the lands granted, *or* one-third the actual value of them.   The bill proceeds to charge, that the complainant entered upon and discharged the duties which were devolved upon him by the agreement, and did, in fact, examine and report to John T. Lamar, a vast number of lots of land, lying in the County of Baker and other Counties, all of which are set forth; and that John T. Lamar, not being in funds, or from some other cause, did not, himself, grant the lands, but instead, communicated the information which had been furnished him by the complainant in relation to them—their numbers, quality, location, &c.—to the defendant, Gazaway B. Lamar, who was, at the time, a citizen of Georgia, but who, the bill admits, was, at the time of suing it out, and still is, *a citizen of the State of New York;* and, at the same time, communicated to him the terms of the agreement between himself (John T. Lamar) and the complainant.   The bill farther states, that the defendant, Gazaway B. Lamar, was induced by the said John T. Lamar, to "step into the place of him, the said John T. in said operation ; advance and pay into the treasury the grant fees for the lands which he might, from time to time, and altogether, grant, in pursuance and in consequence of the information afforded by your orator, in consideration aforesaid ; take the grants directly to himself, instead of to the said John T. for whose benefit, really, the said investment was made by the said Gazaway B.; give to your orator a one-third interest in such lands as he should grant on the information aforesaid, *or* pay to your orator the one-third of the actual value of said lands."   After this recital, the bill charges, "All of which your orator believes and charges that the said Gazaway B. agreed to do."

The complainant avers, that he did grant the lands named in the bill, and take the titles in his own name.   It (the bill) farther sets forth, that Gazaway B. Lamar, through Mr. Edwards, his agent, had advertised the lands for sale at Milledgeville.   It charges, that such sale would be greatly prejudicial to the interest of the complainant, in the lands, and *elects* the one-third interest in them, under the contract, instead of one-third the actual value. It also charges, that the complainant, " desires to have the said lands admeasured, laid off, and valued by fit and proper persons for that purpose, and his one-third part thereof set apart, laid off and assigned to him by such persons, so that he may have the pre-

sent enjoyment thereof, *and that the said Gazaway B. may be compelled, by a decree of this Court, after such assignment and admeasurement, to convey to your orator such part and parcels as may be assigned to him,* that he may have the legal as well as equitable title to said lands—the present enjoyment, as well as the hope and expectancy thereof." It farther charges, that Gazaway B. Lamar, having availed himself of the information furnished by the complainant, and all the benefits of the contract between him and John T. Lamar, is, in equity, bound to fulfil the obligation assumed therein by the said John T.; that is, to let him, complainant, have the one-third interest in the lands, and that he holds the one-third interest in the lands in trust for the complainant.    The prayer is, first, for an injunction against the sale ; second, that the Court "have assigned to the complainant the one-third part of the said lands, in such way as shall seem fit ;" and, third, for general relief.

Such is the bill—the primary object of which is the injunction which issued, and was dissolved, upon notice and motion, at Chambers.    The order dissolving the injunction is the judgment excepted to.    It is sought to be sustained, before this Court, upon the ground that the Court below, in the case made by the bill, had no jurisdiction over the defendant, Gazaway B. Lamar, *a citizen of New York.*    Whether it had,jurisdiction for the purpose of the injunction, must depend upon the question, whether it had jurisdiction, for the purpose of the ultimate relief sought by the bill ; for it is manifest, that if the Court could not grant the decree which, is asked by the bill, for the want of jurisdiction, it could not enjoin the sale of the lands.    So, the question now is, whether, in this case, according to the allegations in the bill, the complainant could, upon the hearing, have the relief he asks against Gazaway B. Lamar, who was, at the time of suing out the process, and who now is, a citizen of New York ?    Again, there recurs the inquiry, what is the character of the complainant's bill?    There are two aspects presented by the bill.    It is either a bill to enforce the agreement, and to decree the execution of titles to one-third of this land, or it is a bill for partition.    In either event, our judgment is, that the Court had not jurisdiction.

The prayer alone cannot characterise a bill; for that derives *its* character from the allegations in the bill.    It must be consistent with the bill, or it is nugatory.    It may fall short of the case

made, or it may exceed it. In the latter event, its excess amounts to nothing. I apprehend, that if the specific prayer falls short of the relief which the charges in the bill demand, under the prayer for general relief, the Court could grant relief co-extensive with such charges. Now, here the specific prayer is for an assignment of one-third of the lands in question, to the complainant. Judging the bill by this prayer, it would seem to be a bill for a partition and assignment; but the general prayer covers all the relief which the allegations in the bill would permit—so that we are not to characterise the bill by the special prayer alone. So far as the prayers are *indicia* of what the case is made in the bill, we must consider them together; and the special and general prayer, taken together, are co-extensive with the allegations in the bill. Upon them we are, therefore, thrown, to ascertain what it is that the complainant wants—what kind of case he makes. He sets forth an agreement, entered into by the defendant, by virtue of which he, the defendant, stipulated to John T. Lamar, to give to the complainant, one-third interest in the lands which were granted by him, *or* one-third their actual value. He *elects* to take the one-third interest, assuming that the alternative is for his benefit. The agreement, then, set up in the bill is, *that in consideration of the services rendered, and the information relative to the lands, afforded by him, Gazaway B. Lamar undertook to give complainant the one-third interest in them.* This is the gravamen of his bill—this the foundation of his action. Without this, he obviously would have no case in Court of any kind; and it seems to me, that the averments which follow, taken in connection with this agreement, establish the character of this action, and demonstrate it to be, a bill filed to procure a decree against the defendant, that he execute titles to the one-third of the lands, in pursuance of this agreement. Parenthetically, I remark, that other and very grave questions might arise on this bill, if it were retained until the hearing. I discuss only the one made in this record, to wit: the question of jurisdiction. The complainant does not claim to have even an equitable title to this one-third, except by implication. He distinctly admits that the legal title is in the defendant. The interest which he claims, is not a title in equity which he has bought, or which has passed to him by contract, or which has otherwise devolved upon him. His bill shows no such title—no *seizin*, equitable or legal, of any portion of these

Adams *vs.* Lamar.

lands.   The contract which it exhibits is, as to the defendant, an *executory* contract, for a breach of which an action would lie at Law, or for the specific performance of which a decree might be had in Equity.   The latter experiment, it seems to us, he has made.   Aside from other considerations, we infer this from the legal effect of the agreement which he has set up in his bill.   If he, by his own showing, is not seized, either in Law or in Equity, of the one-third of these lands, he cannot come into Equity for a partition ; and, because he cannot, it is a fair inference that he does not come here for that purpose.   The most significant and characterising averment in this bill is that which charges a right, expressed in the form of a desire, to have the lands admeasured, laid off and valued, and his one-third set apart, laid off, and assigned to him, and *that the defendant be compelled, by a decree, to convey to him the part so assigned.*   Whatever else is demanded, this is a distinct demand for a decree for a conveyance—for the enforcement of the agreement—for the execution of titles.   This demand is consistent with the agreement, and the prayers of the bill are in harmony with it; for whilst, under the special prayer, an assignment, it is true, is asked, yet, under the general prayer, the execution of titles might be decreed.   Again, it is charged, that the defendant is bound, in equity, to fulfil the obligation assumed in the agreement by John T. Lamar, and to *give him* (convey to him) the one-third of the lands.   He asserts a right by charging an obligation.   The right is to have the agreement carried into effect according to its stipulations.   Whilst, therefore, it must be admitted, that this bill has a double aspect, yet the fairest construction, I think, must needs make it a bill to compel Gazaway B. Lamar to comply with the contract, by executing to the complainant a title to the one-third of these lands.   If it is, it is a bill asking a decree, *in personam,* against the defendant, who is a citizen of another State.   Has a Court of Chancery in Georgia, for such a purpose, jurisdiction over a citizen of New York? Beyond all question it has not.   The question, whether a citizen of a foreign State, could be made a party to a cause in the Courts of Georgia, without his consent, so as to bind him by a judgment, *in personam,* was made before this Court, in the case of *Dearing et al. vs. The Bank of Charleston.*   That cause was argued by the most eminent gentlemen of the profession in the two States of South Carolina and Georgia, and received the most se-

rious consideration which we could bestow upon it. With the principles settled in it, we are well satisfied, and I am, therefore, relieved from a full discussion, in this case, of the interesting question of jurisdiction. Assuming, now, that the object of this bill is to procure a decree, *in personam*, against the defendant, a citizen of New York, the single point is, have the Courts of Georgia jurisdiction? This case falls within no exception to the rules laid down in *Dearing vs. The Bank of Charleston*. The question there, was the question here. I shall, therefore, state simply the principles settled in that case, and leave this branch of this cause. It was settled in *Dearing vs. The Bank of Charleston*—

1. That there is no Statute Law of Georgia, which authorizes citizens of a foreign State to be made parties to proceedings in our Courts, without their consent, and to conclude them by a judgment, *in personam*.

2. That the Act of 5 *George II.* is, in its spirit, of force in Georgia; but that it applies to citizens of the State who abscond, or depart from the State to avoid service of process, or to citizens of a foreign State, who, having been in the State, depart therefrom for the purpose of avoiding service of process.

3. That the property of a citizen of a foreign State is subject to the jurisdiction of our Courts, if within the limits of the State, and may be applied, both at Law and in Equity, to the payments of his debts.

[1.] 4. That the jurisdiction of the Superior Courts of Georgia, is co-extensive with its sovereignty, and that is limited only by its territory, and it therefore attaches upon all the property, personal and real, and the persons within the limits of the State; yet it is to be exercised so as to conclude none by judgments except those who are parties.

[2.] 5. That the Courts of this State have no extra-territorial jurisdiction, and cannot make the citizens of foreign States amenable to their process, or conclude them by a judgment, *in personam*, without their consent; and a judgment, *in personam*, against a citizen of a foreign State, in a cause wherein he did not appear, although notice was served upon him by publication, under the 2d Equity Rule, is a nullity.

[3.] 6. That a citizen of a foreign State may waive his exemption from the jurisdiction of our Courts, and come in and defend,

and in that event he would be concluded by the judgment of our Courts.

[4.] Suppose, however, that this bill be viewed in the light of a proceeding in Equity to partition lands—and it is so claimed to be by the complainant—still it is obnoxious to the exception, that in the case made by the bill, the Court has no jurisdiction. In this State, by the Act of 1767, the mode of partitioning lands, held in coparcenary, joint tenancy and tenancy in common, is prescribed. It is by petition to the Superior Court, and exhibition of title. The Court is required to *examine the petitioner's title*, and *thereupon* to issue a writ of partition. There must be a *legal title* in the applicant—he must show a *seizin* in coparcenary, joint tenancy or tenancy in common. The partition, when made, becomes the judgment of the Court, and, therefore, without more, the partitioned property vests; and so it is by the Common Law writ of partition. These operate by judgment of the Court. Notwithstanding this statutory remedy for partitioning, Equity has jurisdiction over this subject matter also. "It is (says Mr. *Story*) upon some or all of these grounds—the necessity of a discovery of titles—the inadequacy of a remedy at Law—the difficulty of making the appropriate and indispensable compensatory adjustments—the peculiar remedial processes of Courts of Equity, and their ability to clear away all intermediate obstructions against complete justice—that these Courts have assumed a general concurrent jurisdiction with Courts of Law, in all cases of partition." *Story's Eq.* §658.

It is not my purpose to enter into a minute survey of the grounds of this jurisdiction. It is admitted that Equity has jurisdiction over the partition of lands; and it is well settled that Equity will decree a partition on an equitable title. *Lord Hardwick in Cartwright vs. Pulteney*, 2 *Atk.* 380. *Story's Eq.* §653. *Coxe vs. Swain*, 4 *John. Ch. R.* 276.

But in no case will a Court of Equity decree a partition, unless there is a title in the applicant, either legal or equitable. Now if, in this case, there was no controversy about the jurisdiction—if Gazaway B. Lamar was rightly before the Court—it is extremely doubtful whether a Chancellor could, upon the title set up, (an interest merely in an executory contract,) proceed to decree a partition—decree that he could not, without first ascertaining, by a preliminary issue and decree, the complainant's title.

Adams vs. Lamar.

I am strongly inclined to the opinion, that it would be his duty to remit the complainant to his proceeding to enforce the contract and get a title, before he could entertain the bill for partition. *Then*, unless other causes should make it necessary, he would not be compelled to go into Equity for partition—he could proceed under the Statute at Law. It does seem to me, that when the complainant in this case admits, that the legal title to all these lands is in the defendant, and shows no relation in Equity or at Law to the defendant, as coparcener, joint tenant or tenant in common, but only shows a contract to convey, on the part of the defendant, he has effectually closed the doors of Chancery against himself.

But with a view to the question of jurisdiction, I inquire, what is the *modus operandi*, upon a bill in Chancery, when that Court decrees a partition of lands? "In cases of partition of estates, if the titles of the parties are in any degree complicated, the difficulties which have occurred in proceedings at Common Law, have led to applications to Courts of Equity for partitions, which are effected, by first ascertaining the rights of the several persons interested, and then issuing the commission required, and upon the return of the commissioners, and confirmation of that return by the Court, the partition is finally completed by mutual conveyances of the allotments made to the several parties." *Lord Redesdale. Mitford's Pleadings in Eq. by Jeremy*, 120. Lord *Eldon, in Agar vs. Fairfax*, 17 *Vesey*, 531. To a partition, then, in Equity, according to Lord *Redesdale*, three things are necessary—

1. That the rights of the parties be ascertained;
2. That the return of the commissioners be confirmed; and
3. That the parties mutually convey to each other.

The first and second are material here to notice. It is first necessary, that the rights of the parties be ascertained. That is, that the complainant show his title, and the defendants exhibit theirs. This is the first issue made, and it is upon this issue that the first and preliminary decree is founded—*a decree which adjudges the rights of the parties.* This is a decree *in personam*—it does not act upon the property—it is not a partition. It acts upon the parties—it adjudges—*ascertains* (in the language of Lord *Redesdale*) their *rights* in the property. It is after, and in consequence of this decree, that the commission issues; and the action

of the commissioners, and its confirmation by the Court, is, in fact, the partition. When this is done, a final decree is necessary, and that is, that the parties execute conveyances. *That* also, is a decree *in personam*—a decree which can be enforced only by those punitory powers with which Chancery is armed, to compel obedience to its orders. It is sufficient for my purpose, if I have shown, and I submit that it is shown, that Equity could not partition the lands in this case, without rendering a decree *in personam* against the defendant. For this purpose, as before shown, the Courts of Georgia have no jurisdiction over him. Suppose, then, that the Court proceeds upon this bill. It would be necessary to ascertain the complainant's rights as against the defendant, under the contract set up under the bill, and decree accordingly, and decree farther, that defendant convey to him. He is not before the Court—it has no process to bring him there—its processes run not into New York. These decrees would be rendered, in the expressive language of the books, *behind his back*— in violation of the comity of States—of the sovereign rights of New York—and would be but a sounding brass and a tinkling cymbal. The decree which ascertains the right of the complainant to a partition, must necessarily precede the appointment of commissioners. No Court would, upon the averments in the bill, without proof, award a partition; and whenever it makes an issue on those averments, it is a personal issue; and whenever it decrees upon that issue, it is a judgment *in personam*. I do not deny the jurisdiction of a Court of Chancery over the lands within the limits of the State, for the purpose of partition, owned by a non-resident, and others who reside within the State. As, if lands are held in parcenary, joint tenancy, or tenancy in common, by A, B, and C, and C resides out of the State. In such case, if, on any account, it became necessary to go into Equity, that Court would no doubt partition, as between the parties within the jurisdiction, and its judgment would conclude them; but it would not bind C, who is not before the Court. *Story's Eq.* § 656. 17 *Vesey,* 544. *Dearing vs. The Bank of Charleston.* 5 *Geo. R.* 497. In such a case, if the petitioner's title was clear, a *Court of Law* would proceed to partition, and let him into possession, leaving the non-resident to assert his rights.— Nay, more; I think it is clear, that, if two are joint tenants, or parceners, or tenants in common, of lands within the State, and

one is a non-resident, upon exhibition of his title, and that being clear, *a Court of Law* would partition, at the instance of the resident citizen.   But when the right to a partition, as against a non-resident, depends upon an *equitable title,* to be ascertained by a decree, and there are no parties but the claimant and the non-resident, (which is this case,) I am well assured that Chancery would decline the jurisdiction.   It would advise the complainant to resort to the tribunals holding jurisdiction of the person of the foreign citizen, and having there established his title, and procured his deed, return, and ask and receive a partition. That the Courts of New York, and the Circuit Court of the United States, are open to this complainant, to enforce this contract against *Gazaway B. Lamar,* there can be no doubt.   He is not, therefore, remediless.   If his claim, as set forth in this bill, be sustainable, he can there enforce a title to his one-third interest in these lands, and having done so, he can enforce a partition here. *Penn vs. Lord Baltimore,* 1 *Vesey, Sr.* 446.     *Earl of Kildare vs. Eustace,* 1 *Vernon,* 419.   *Toller vs. Carterlet,* 3 *Vernon,* 494.   *Massie vs. Watts,* 6 *Cranch,* 148 *to* 170.     *Cranston vs. Johnson,* 3 *Vesey, Jr.* 182.   *Jackson vs. Petrie,* 10 *Vesey,* 164.     *Mead vs. Meril,* 2 *Paige,* 404.   *Mitchell vs. Burch, Ib.* 614.   3 *Story's Com. on the Constitution,* §§1631, 1684 *to* 1686.   *Story's Equity,* §§743, '4, 899, 1293.

[5 ] The defendant, upon the motion to dissolve the injunction, appeared by counsel, and insisted upon its dissolution upon several grounds, but mainly, because the Court had no jurisdiction over him, being a citizen of New York ; and it is argued before us, that, having appeared, he waived his exemption thereby from the jurisdiction of the Court, and would be bound by its judgment.   It is the privilege of a foreign citizen to waive the want of jurisdiction over him, in the Courts of Georgia.   He may come in and submit to the jurisdiction and plead, and would, in that event, be concluded by a judgment *in personam.*   Mr. *Story,* in *Picquet vs. Swan,* says, " If the party chooses to appear, and take upon himself the defence of the suit, that might vary the case, for he may submit to the local jurisdiction, and waive his personal immunity." ' 5 *Mason R.* 43, '4.   In *Dearing vs. The Bank of Charleston,* we say, " It has been already intimated, that if a citizen of a foreign State should appear and defend a suit, and a judgment *in personam* be rendered against him, he

would be concluded by it. He may waive his exemption from the jurisdiction, and being heard, could aver nothing, in any tribunal, against the judgment. 5 *Geo. R.* 519. But what is it to appear and defend? He must appear and plead, or answer, to the merits, submitting voluntarily to the jurisdiction. When he does appear, upon what principle is it that he will be concluded by the judgment? It is upon the principle of consent that it shall bind him. He *elects* to litigate his rights in that forum, and therefore can aver nothing against the judgment which it renders. The record in such a case, I apprehend, should furnish evidence of this consent. Pleading to the merits, and a judgment on the pleading, would evince his consent. But if, on the contrary, the record should disclose a plea to the jurisdiction—*dissent* to the jurisdiction—he could aver against the judgment; it would not bind him. In this case, upon a motion to dissolve, the defendant, by counsel, resists the jurisdiction. He solemnly disclaims it. He *asserts* his immunity. He claims the protection of a foreign sovereignty, against the local jurisdiction. He exclaims, upon the record, as the Roman did under the scourgings of *Verres*, " I am a Roman citizen." And all this upon an interlocutory motion, before the case has reached its merits. Strange absurdity, that the very act of resisting the jurisdiction, should be held an assent to it.

Let the judgment be affirmed.