## ENTERPRISE DISTRIBUTING CORPORATION *v.* ZALKIN, trustee; *et vice versa.*

1. The written instrument wherein the Enterprise Distributing Corporation let to the United Picture Productions Corporation the property therein described, for a period of fifty-two weeks, the latter company agreeing to

7

make to the former corporation, at stated intervals during this term, certain payments as rentals, and the former agreeing to deliver to the latter a bill of sale to said property, after the expiration of said term, if the United Picture Productions Corporation had fully complied with all its obligations as to such payments and otherwise, constituted a sale of the property described.

2. Under this instrument, when the buyer failed to make any one of the payments on the purchase-money of this property, the seller had the right to declare the agreement at an end, and to require the buyer to return all the property forthwith to the seller.

3. Under a conditional bill of sale the seller, independently of the contract, has a right to the possession of the property sold, when the buyer fails to pay therefor, and can retake the property.

4. A rescission of the contract of sale by the seller under such circumstances gives to the buyer the right to the return of so much of the purchase-price as has been paid, less reasonable rental, and less any deterioration in the value of the property by damage, over and above natural wear and tear, which it may have sustained while in the possession of the purchaser.

5. Generally, rescission of a contract of sale is in toto, leaving the rights of the parties to be determined by a court of equity, and not by the abrogated contract.

6. When the seller rescinds a conditional contract of sale, and repossesses himself of the property sold, a court of equity may require the return of the purchase-money paid, less the amount of any damage sustained to the property, and a reasonable compensation for the use of the same; especially if there be a clause in the contract providing that upon a certain contingency the property shall be returned to the seller.

7. When the seller rescinds a contract of sale and takes possession of the property sold, this right can not only be asserted by the buyer defensively to an action by the seller to rescind, but can be enforced affirmatively in equity by the buyer or his trustee in bankruptcy, in an equitable complaint for accounting.

Nos. 3061, 3062. August 18, 1922.

Equitable petition. Before Judge George L. Bell. Fulton superior court. December 16, 1921.

Zalkin, as trustee, filed his petition in Fulton superior court against Enterprise Distributing Corporation, and made this case: (1) Petitioner " is the duly and legally appointed trustee in bankruptcy, by the District Court of the United States for the Southern District of New York, of United Picture Productions Corporation, a corporation under the laws of the State of Delaware." The defendant is a Georgia corporation with its principal office in Fulton county, Georgia. (3) On January 17, 1920, the defendant and United Picture Productions Corporation, hereinafter referred to as United, entered into a contract, copy of which is

attached as exhibit A. (4)   Said contract is called a lease, but in truth is not a lease, but a contract of sale under the terms of which United was to purchase the property in said contract described, by making the payments set out in said contract, running over a period of something less than three years, at the end of which time payment for said property would have been completed, and title to said properties would have vested completely in United. (5)   In drawing up a contract of sale, terming the same such contract of lease, calling the payments on account of purchase price rentals, the defendant was merely adopting a plan by which it sought to provide for the forfeiture of the part payments on the purchase-price of said contract in the event United should fail or be unable to meet all the payments on the purchase of said property; and a court of equity will look beyond the mere terms and names applied in said contract, will consider the real nature and character of the transactions involved, will recognize the equity arising on the part payment of the purchase price on said property, and will relieve against such forfeiture. (6) United paid to the defendant in cash $25,000 on or about the execution of said contract. (7)   United did further pay to the defendant the sum of $7,000 in each and every week, commencing January 25, 1920, and running to or about April 1, 1920, making a total of nine payments aggregating $63,000. (8)   On information and belief, the total amounts paid in cash to the defendant under the sixth paragraph of the contract aggregated the sum of $88,000. (9)   On or about the second week in April the defendant retook possession of said property, because of the default of United in keeping up its payments, and is now in possession of said property. (10)   The defendant has not returned to United, or your petitioner as its trustee in bankruptcy, said $88,000 or any part thereof. (11)   In equity defendant is liable to account to your petitioner for the sum so paid on the purchase-price of said property, less such an amount as may be shown to be the reasonable rental value thereof for the ten weeks that the same remained in the possession of United; and petitioner is entitled upon said accounting to have a decree for the amount shown to be due, together with interest thereon. (12)   Petitioner is willing to allow the defendant a credit on said amount for whatever amount may be found due as a reasonable rental value of

said property for the time the same remained in the possession of United, and on information and belief admits that the rental value of said property was as much as —— dollars per week, to which the defendant is entitled to a credit. (13) On or about April 27, 1920, United was adjudged a bankrupt in the District Court of the United States for the Southern District of New York, and petitioner was duly and legally appointed and qualified as trustee in bankruptcy in said cause. Petitioner prayed that it be decreed that the said contract was and is a contract of sale, that the payments thereon were part payments on the purchase price of said property, creating equities in the purchase thereof, that the device or scheme of said contract for forfeiting the rights and equities arising from the non-payment of said purchase-money be decreed to be an attempted forfeiture and void; that petitioner have an account of the defendant for the sums paid on said contract, on which is to be credited the reasonable value of the property for rent; and that the amount due petitioner upon said account be ascertained and that he have a decree therefor.

Attached as exhibit A to said petition was a contract between Enterprise Distributing Corporation, hereinafter referred to as Enterprise, and United Picture Productions Corporation, hereinafter referred to as United, the pertinent provisions of which will be stated. (1) Enterprise operates motion-picture film exchanges, in certain premises set forth in schedule A annexed to said contract. (2) The subject-matter of this agreement includes certain property fully described in article 2 of said contract. (3) Enterprise hereby lets to United, and United hereby hires from Enterprise, the physical assets fully described in paragraph 2, for the term of fifty-two weeks from the 25th day of January, 1920, upon and subject to all the terms and conditions hereinafter set forth. If after the expiration of said fifty-two weeks United shall have fully complied with all its obligations under this agreement to be performed, Enterprise agrees to deliver to United at such time a bill of sale of all its physical assets, free and clear of any lien or incumbrance. (4) Enterprise hereby leases to United and United hereby hires from Enterprise, upon and subject to the terms herein set forth, said Triangle Films and said Percentage Films, and all the right, title, and interest of Enterprise to them and to each of them, subject, however, as to each such

film, to the terms and conditions of any existing agreements obligating Enterprise to do or to refrain from doing any acts or things with respect thereto. (5) Enterprise agrees to furnish United, upon request, copies of all agreements affecting any such films; and United agrees thereafter to indemnify, defend, and hold harmless Enterprise from any claim or demand arising, whether justifiable or not, by reason of any act or omission of United in the possession, exploitation, or custody of said films. (6) United agrees to pay as rental for the rights hereby granted the following sums: $25,000 on the execution and delivery of this agreement, receipt whereof is hereby acknowledged; $26,000 on the 18th of July, 1920, in cash, or, at the option of United, in certificates of its full paid and non-assessable common capital stock, made out in the name of Enterprise for that number of shares which, at the lowest market price quoted in any of the New York daily papers on the 17th day of January, 1920, shall equal the sum of $26,000; $26,000 on or before the 24th day of January, 1920, in cash or, at the option of United, in certificates of its full paid and non-assessable preferred capital stock at par, made out in the name of Enterprise; $26,000 on the 25th day of January, 1921, in cash or, at the option of United, in certificates of its full-paid and non-assessable common capital stock made out in the name of Enterprise, for that number of shares which, at the lowest market price quoted in any of the New York daily papers on the 17th day of January, 1920, shall equal the sum of $26,000; $26,000 on the 25th day of January, 1921, in cash or, at the option of United, in certificates of its full-paid and non-assessable preferred capital stock at par, made out in the name of Enterprise; $7,000 in each and every one of the fifty-two weeks next succeeding January 25, 1920, to be paid as prescribed in clause 9 hereof; $4,000 on February 9, 1921, and on Wednesday of each of the following forty-nine weeks; $1500 on January 25, 1922, and on Wednesday of each of the following forty-one weeks. (11) United agrees: (a) To display the name "Enterprise Distributing Corporation" with prominence on all film exchanges, during the first fifty-two weeks after January 25, 192-, but it shall appear upon such exchange that United is the lessee of Enterprise. . . (d) To pay all rents due and comply with all the obligations of leases of the said premises to Enterprise. (12)

Upon the completion of all the payments hereinafter provided to be made by United, all the right, title, and interest of Enterprise in and to any of the leased property and the whole thereof shall become and be vested in United, and Enterprise will execute any further instruments necessary to confirm such right of property. (13) If United shall fail to make any one of the payments hereinabove required to be made upon the day when same falls due, or if United shall be declared bankrupt or insolvent, or if a receiver of the United shall be appointed, the entire unpaid balance of the rental herein provided for shall immediately become due and payable, and United agrees to pay the same. If United fails to perform any other of its obligations hereunder within five days after notice of its failure so to do, Enterprise may, at its option: (*a*) declare the unpaid balance of rental herein provided for to be immediately due and payable; or (*b*) declare this agreement to be at an end, and require United, at it own cost and expense, and without charge or deduction of any kind to Enterprise, to distribute Triangle Films and Percentage Films through such six film exchanges for a period of fifty-two weeks after such default, and to pay Enterprise the entire proceeds of such distribution; or (*c*) declare this agreement to be at an end, and require United to return all property leased by Enterprise to United hereunder forthwith to Enterprise; and further to deliver to Enterprise, free and clear of all debt, lien, or encumbrance, all prints of Triangle Films or Percentage Films acquired by United subsequent to January 25, 1920, and all posters, advertising matter, and accessories which at the date of demand shall be in the possession of United in any of such film exchanges.

" Enterprise shall have the right to exercise any of said options within thirty days after notice by Enterprise to United of such default, and the failure of Enterprise in the event of any default to give such notice or exercise any one of such options shall not be or be deemed to be a waiver of the right to give such notice or exercise the said options or any of them in case of a subsequent default, nor shall such failure to give notice or exercise such options be deemed to be a consent to any deviation from the terms of this agreement by United." (14)  " United agrees that if Enterprise exercises the option set forth in subdivision (*a*) of clause 13 hereof, United will pay to Enterprise, upon demand, the sum

then declared to be due. United agrees that if Enterprise exercises the option set forth in subdivision (b) of clause 13 hereof, United will for the period of fifty-two weeks after such default, ·freely and without charge or deduction, exploit to the best of its ability all of such Triangle Films and Percentage Films through said six film exchanges, and permit Enterprise to supervise and control such exploitation through sales managers at each film exchange, to be employed by Enterprise at its own cost. United agrees that if Enterprise exercises the option set forth in subdivision (c) of clause 13 hereof, United will immediately upon demand return to Enterprise all property leased hereunder, and deliver to Enterprise, free and clear of all lien and encumbrance, all other property described in such subdivision (c)." (15) "Possession of the leased property shall be delivered to United by Enterprise at the commencement of business on the 25th day of January, 1920." (17) "This agreement does not create a partnership between the parties, nor does it make United the agent or representative of Enterprise. It is simply a lease to be construed strictly according to its terms." (18) "United has no right hereunder and hereby agrees not to make any contract or enter into any obligation purporting to obligate or ·bind Enterprise in any manner whatever. All the property leased hereby shall remain the property of Enterprise until the full and complete satisfaction of all payments to be made by United hereunder; whereupon Enterprise agrees to transfer all its right, title, and interest in and to the leased property to United by proper instrument upon demand."

By an amendment petitioner alleged that "said United Picture Productions Corporation was duly and legally adjudged a bankrupt in the District Court of the United States for the Southern District of New York, that being the residence of the said United Picture Productions Corporation, on the seventh day of July, 1920;" and "on the thirty-first day of August, 1920, your petitioner was duly and legally appointed trustee in bankruptcy of" said corporation, and qualified as such. By another amendment the plaintiff alleged, on information and belief, that the fair weekly rental value of said property was $500 a week, and for the ten months that the same was in the possession of the United Picture Productions Corporations, $5,000; and prayed judgment against the defendant for $83,000, with interest from April, 1920, at seven per cent. per annum.

The defendant demurred generally to the petition, on the grounds (1) that plaintiff had not stated such a cause as would entitle him to the relief prayed; and (2) that the petitioner does not set out any matter or thing of equity, and that upon the allegations therein plaintiff is not entitled to the equitable relief prayed. The defendant demurred especially upon the following .grounds: (1) Because it nowhere appears from the petition that the United Picture Productions Corporation has been properly or legally adjudged a bankrupt by any court of competent jurisdiction; and (2) because it appears from said petition that plaintiff has no lawful power or authority to maintain this suit. The court overruled these demurrers of the defendant; and error is assigned on that ruling in the main bill of exceptions.

The defendant answered the petition. Paragraphs 7, 8, and 11 of its answer are as follows: (7) "The defendant, answering paragraphs 7 and 8 of the said petition, says: That all money paid by United to the defendant, over and above the $25,000.00 referred to in paragraph 6 of the petition, was paid by deducting the same each week from earnings received by defendant from the property of this defendant referred to and described in said contract of January 17th, 1920; and defendant denies that United ever paid to this defendant any sums of money, except the said $25,000.00, other than that which was collected out of the business and property turned over by this defendant to United, and all of such collections in excess of $7,000.00 were each week remitted to and retained by United." (8) "Defendant denies that this defendant ever retook possession of the property mentioned and described in said contract of the 17th day of January, 1920, because of default of United in keeping up its payments. Defendant admits, however, that United did, on or about the second week in April, 1920, request this defendant to take back so much of said property as was then in possession of United, and to relieve United from any further or other obligations under said contract; and United did voluntarily turn over to this defendant so much of said property as was then in its possession, and this defendant has ever since remained in possession thereof." (11) "Defendant has no knowledge or information sufficient to form a belief as to the willingness of petitioner to allow this defendant any credits, or how much credit petitioner is willing to allow; but defendant is ad-

vised and believes that if the contract of January 17th, 1920, was a contract of sale, as alleged in petitioner's petition — which allegation defendant again denies — and if defendant shall be held liable to account to the petitioner for any part of the money paid by United to defendant under the terms of said contract, defendant is entitled to and should be allowed on said accounting, not only a credit for the reasonable rental value of the property mentioned and described in said contract, but also a credit for all damages which defendant has sustained by the failure of United to carry out and perform said contract; and defendant alleges that prior to the execution of said contract it had built up a large and growing business with the property and film exchanges referred to in said contract, and at the time of the execution of said contract and for a long time prior thereto said business was and had been yielding to defendant a substantial profit in excess of $7,000.00 a week, and all of the earnings from said property and business, except the sum of $7,000.00 a week, did, after the execution of said contract, inure to the benefit of and were remitted to and retained by United. But defendant is informed and believes and avers the fact to be that United, while it was in possession of said property and exchanges, used said property and managed and operated the business of said exchange in such way as to greatly reduce the value thereof, and contracted debts and assumed obligations in connection with said property and business, which debts and obligations this defendant, in order to re-establish said business, was afterwards required to and did pay and carry out, so that when said property and exchanges were returned to this defendant, said property had so depreciated in value and the business of said exchanges so decreased that same was being conducted at a loss; by reason of all of which, and the failure of United to carry out and perform said contract, the defendant has been damaged in its property and business at least $100,000.00 and in a sum largely in excess of any and all amounts paid by United to defendant under said contract."

The plaintiff demurred to paragraph 7 of the answer, upon the ground that it was irrelevant and immaterial to any legal issue in the case. He demurred to paragraph 8 as vague and indefinite, in that it does not appear what property the defendant retook or the United surrendered, and further to that portion of paragraph

8 in which it is alleged that United requested defendant to re-take said property, in that it does not appear what officer, agent, or representative of said United made the request, or how it was made. He demurred to that portion of paragraph 11 which alleges that the defendant was entitled to a credit for damages which the defendant had sustained by the failure of the United to carry out its contract, as vague and indefinite, in that it does not appear with sufficient certainty and definiteness how or in what manner the United failed to carry out its contract, and how or in what manner the defendant was endamaged there-by, or the items of damage in regard thereto. He demurred to the last sentence of paragraph 11, on the ground that the same is vague, indefinite, and is not set out with sufficient certainty to enable the plaintiff to understand the nature of said offsets or counter-claims; because it is not alleged how United mismanaged the property, how its value was reduced, and in what manner the mismanagement of the property constituted a legal claim for damages to defendant; because it does not appear what debts and obligations United contracted, why and in what manner the defendant became liable therefor, or how the defendant, if it voluntarily paid the same, can charge the same to plaintiff. He demurred specially to the portion of said paragraph which alleges that the business with the exchanges had decreased and was being conducted at a loss, because the same is not a proper item of set-off or a recoverable element of damages, and because the same is vague and indefinite, and it does not appear in what legal way the United or its trustee in bankruptcy is responsible therefor. He demurred specially to the allegation that the defendant was damaged in the sum of $100,000, because it nowhere appears that the defendant suffered any legal damages. He further de-murred to paragraph 11, on the ground that it does not set out any recoverable set-off or counter-claim to which the defendant is legally entitled; and because it does not appear how or in what manner the United failed to carry out its contract, and how and in what manner the failure worked any legal damage to the defendant. The court overruled the plaintiff's demurrer; and error was assigned on that ruling in the cross-bill of exceptions.

*Alfred S. Barnard,* for plaintiff in error in main bill.

*Little, Powell, Smith & Goldstein,* contra.

HINES, J. (After stating the foregoing facts.)

1. The pertinent parts of the written contract between Enterprise. Distributing Corporation and United Picture Productions Corporation are set out in the foregoing statement of facts. Under this instrument the transaction between the parties is one of sale, and not a lease proper, although denominated the latter. It is a sale under a nom de plume. This written instrument, wherein the Enterprise Distributing Corporation let to the United Picture Productions Corporation the property therein described, for the period of fifty-two weeks, the latter company agréeing to make to the former corporation, at stated intervals during this term, certain payments as rentals, and the former agreeing to deliver to the latter a bill of sale to said property, after the expiration of said term, if the United Picture Productions Corporation had fully complied with all its obligations as to such payments and otherwise, constitutes a sale. This principle is so well established by the decisions of this court as to need no elaboration. *Hays* v. *Jordan*, 85 *Ga.* 741 (11 S. E. 833, 9 L. R. A. 373); *Cottrell* v. *Merchants &c. Bank,* 89 *Ga.* 508 (15 S. E. 944); *Snook* v. *Raglan*, 89 *Ga.* 251 (15 S. E. 364); *Ross* v. *McDuffie,* 91 *Ga.* 120 (16 S. E. 648); *Lytle* v. *Scottish American Mortgage Co.,* 122 *Ga.* 458 (50 S. E. 402); *North* v. *Goebel,* 138 *Ga.* 739 (76 S. E. 46).

2. Under this instrument, if the buyer failed to make any one of the payments on the purchase-money of this property, the seller had the right to declare the agreement at an end, and to require the buyer to return all of the property forthwith to the seller. The buyer paid the seller $88,000 on the purchase-money of this property under this contract. On or about the second week in April, 1920, the defendant retook from the buyer the possession of this property, because of its default in keeping up such payments, and was in possession thereof at the time of the institution of this suit. The buyer was adjudged a bankrupt on April 27, 1920; and this suit was brought by the trustee in bankruptcy to recover those payments, less the reasonable value of the property for rent while in the possession and use of the buyer. The right of the plaintiff to this relief is challenged by the demurrer of the defendant. The defendant contends that the petition does not set out any cause of action, or state any facts which entitle the plaintiff to the equitable relief sought; and this contention is based upon

certain matters which we shall now consider. In the first place, it is urged that the petition alleges that the defendant retook possession of this property, but fails to state how this retaking took place. It is alleged in the petition that the defendant re-took possession of this property because of the default of the buyer in keeping up its payments. In the contract of lease, which we find to be one of sale, it is provided that if the buyer should fail to make any payment when the same falls due, the seller can declare the agreement to be at an end, and require the vendee to return all property leased to the seller forthwith. This contract is attached as an exhibit to the petition, and is made a part thereof. Construing the petition in the light of this contract, it sufficiently appears that the seller repossessed itself of this property because of the default of the buyer in making payments of the purchase-money, and under the right to do so given in this contract of sale. Independently of the contract, the seller had the right to the possession of the property, and could retake the same. 35 Cyc. 697; Pfeiffer *v.* Norman, 22 N. D. 168 (133 N. W. 97, 38 L. R. A. (N. S.) 891). It is further insisted that the contract between the parties is one of lease, and not of sale. This contention has been disposed of in what is said in the first division of this opinion. Counsel for the defendant further insists that only a small portion of this property is located within the limits of this State, and that for this reason a court of equity in Georgia cannot deal with this agreement on the principles applicable to a simple conditional bill of sale covering property within this State. No reason is given, and no authority is cited, to sustain this position. It seems to hint at the doctrine that the courts of this State have no extraterritorial jurisdiction, and that they can not deal with persons or property not within the State. *Dearing* v. *Bank of Charleston,* 5 *Ga.* 497 (48 Am. D. 300); *Adams* v. *Lamar,* 8 *Ga.* 83. In the case at bar the court is not proceeding to exercise jurisdiction over property not within its limits; but the purpose of the proceeding is to assert a money demand against a resident of this State. This is far from exercising extraterritorial authority.

It is earnestly insisted that the United Picture Productions Corporation was in default in its payment of the purchase-money of the property embraced in this sale; and that a party in default,

or his trustee in bankruptcy, can not maintain a suit in equity to enforce any right which he might claim under the contract without performing or offering to perform the obligations resting upon him under the contract. The plaintiff is not attempting to assert any rights under this contract; but it is endeavoring to assert equities growing out of a rescission of the contract by the defendant. He is not undertaking to treat the contract as in force; but treats the same as rescinded and ended. "Usually, rescission is in toto, leaving the rights of the parties to be determined by a court of equity, and not by the abrogated contract." *Lytle* v. *Scottish-American Mortgage Co.,* supra. What are the rights of the purchaser under such circumstances? The rescission of the contract of sale by the seller gives to the buyer the right to the return of so much of the purchase-price as has been paid, less rent, and less any deterioration in the value of the property, above natural wear and tear and other damages which it may have sustained while in the hands of the buyer. See cases first above cited; also, *Scott* v. *Glover, 7 Ga. App.* 189 (66 S. E. 380); *Rhodes Furniture Co.* v. *Jenkins, 2 Ga. App.* 475 (58 S. E. 897); *Haverty Furniture Co.* v. *Calhoun, 15 Ga. App.* 620 (84 S. E. 138).

This court has held that the seller, when he rescinds such conditional contract of sale of personal property, becomes liable to the buyer in an action for money had and received, for the amount of the partial payments which were made on the price, less a reasonable sum for hire of the property during the time the buyer had possession of it, and less any depreciation in the value of the property by damage or injury over and above ordinary wear and tear which it may have sustained while in the hands of the buyer. *Snook* v. *Raglan,* supra.

The same doctrine has been declared by the Court of Appeals. *Rhodes Furniture Co.* v. *Jenkins, Scott* v. *Glover,* and *Haverty Furniture Co.* v. *Calhoun,* supra. If an action at law would lie, for money had and received in such a case of rescission, we see no reason why an equitable petition, seeking an accounting, and undertaking to assert the equities of the buyer, would not lie. This right is peculiarly an equitable one. The Supreme Court of the United States has well said: "There seems to be no doubt, however, that a court of equity may require the return of the money paid, less the amount of any damage sustained to the property,

and a reasonable compensation for the use of the same, particularly if there be a clause in the contract providing that upon a certain contingency the property shall be returned to the seller." Sunflower Oil Co. *v.* Wilson, 142 U. S. 313 (12 Sup. Ct. 235, 35 L. ed. 1025):

This is not a right which can be asserted only defensively by the buyer. Where the seller does not rescind, the vendee, who makes default in the payment of the purchase-money, can not go into a court of equity for the purpose of rescinding the contract and recovering the purchase-money paid by him in part performance of the contract of sale. This would permit the vendee to take advantage of his own wrong. The vendee must wait until the vendor rescinds or attempts to rescind. When the vendor rescinds, and takes possession of the property sold, the latter becomes liable to the purchaser for the return of the purchase-money, less rent and damages. The vendee, by making payments upon the purchase-money, acquired an equitable interest in the property, of which he can not be deprived by the action of the seller in rescinding the contract of sale. What was said in *Lytle* v. *Scottish-American Mortgage Company,* supra, to the effect that this right could only be asserted defensively by the vendee, must be considered in view of the facts of that case, which was an equitable proceeding by the vendor to rescind.

After the vendor rescinds a contract of sale, and takes possession of the property sold, under a right reserved in such contract, the vendee, certainly in the absence of a provision for forfeiture, can file an equitable petition against the vendor for an accounting for the purchase-money paid; and will be entitled to recover such purchase-money, less rent of the property during its use by the vendee, and any damage which the property may have sustained while in the possession of the vendee.

3. The grounds of special demurrer to the petition are without merit. Lack of jurisdiction in the District Court of the Southern District of New York to adjudge the United Picture Productions Corporation a bankrupt does not appear on the face of the petition, its jurisdiction being presumed. *White* v. *Davis,* 134 *Ga.* 274 (67 S. E. 716). The trustee could sue without specific authority from the court of his appointment. *McLanahan* v. *Blackwell,* 119 *Ga.* 64 (45 S. E. 785); *Chalman* v. *Dodd,* 23 *Ga. App.* 653 (99 S. E. 150).

The court below did not err in overruling the demurrer to the petition in this case.

4. We come to consider the questions raised in the cross-bill of exceptions. In the seventh paragraph of its answer the defendant alleged that all money paid by the purchaser to the defendant, over and above the initial payment of $25,000, was paid by deducting the same each week from earnings received by defendant from the property embraced in this contract of sale; and the defendant denied that the seller ever paid to it any sums of money, except said $25,000, other than that which was collected out of the business and property turned over by the defendant to the buyer. To this paragraph of the answer the plaintiff demurred on the ground that the facts therein stated were irrelevant. We think this ground of demurrer was well taken, and that this paragraph of the answer should have been stricken. The buyer must account for the rents of the property in this accounting. It would be manifestly unjust to require him to do this, and at the same time deprive him of the income received by him from the use and exploitation of the property purchased. The plaintiff likewise demurred to the eleventh paragraph of the answer of the defendant, on the ground that the same is vague, indefinite, and does not set out with sufficient certainty the damages claimed by the defendant. This paragraph of the answer is set out in full in the statement of the facts. We think this paragraph subject to the special attacks made thereon in the grounds of special demurrer; and that in the absence of an amendment the same should have been stricken on the special grounds of demurrer thereto. *Watters* v. *Retail Clerks Union,* 120 *Ga.* 424 (47 S. E. 911); *Traders Ins. Co.* v. *Mann,* 118 *Ga.* 381 (45 S. E. 426); *McKenzie* v. *Mitchell,* 123 *Ga.* 72 (2) (51 S. E. 34); *John A. Roebling's Sons Co.* v. *Southern Power Co.,* 142 *Ga.* 464 (3) (83 S. E. 138, L. R. A. 1915B, 900).

We do not mean to hold that the defendant, by proper and specific allegations, would not be entitled to set off against the claim of the plaintiff the reasonable rent of the property while in its use and possession, and any damages with which the purchaser should be chargeable. What we hold is, that the defendant does not set out in the eleventh paragraph of its answer, with sufficient certainty, it claim for rent and damages. The court erred in not

sustaining the special demurrers of the plaintiff to the paragraphs of the answer therein attacked.

*Judgment affirmed on main bill of exceptions; reversed on cross-bill. All the Justices concur, except Gilbert, J., absent.*