### 35815. Lincoln Discount Corporation of Georgia, Inc. v. Gibbs.

CARLISLE, J. Where, in an action, brought by one of two joint purchasers of an automobile, against the holder of the conditional-sale contract under which the automobile was purchased, for the tortious repossession of the automobile at a time when no payment was due or in default under the terms of the contract, counsel for the defendant holder states in open court that it will defend the action on the sole theory that the automobile was voluntarily surrendered and not illegally repossessed, this court will on review confine itself to that sole issue (*Ashburn Bank* v. *Bussey*, 157 *Ga.* 657, 121 S. E. 825; *Gunn* v. *A. L. Wilson Co.*, 20 *Ga. App.* 14, 92 S. E. 721); and where the trial court, sitting without the intervention of a jury, is authorized to find from the evidence adduced upon the trial that the automobile was repossessed by the defendant holder at a time when no payment was due or in default under the terms of the conditional-sale contract, and that the automobile was not voluntarily surrendered by either of the two joint purchasers, this court will not disturb the verdict and judgment of the trial court awarding damages for the illegal repossession of the automobile. *Williams* v. *Wolfe Bros.*, 34 *Ga. App.* 767 (131 S. E. 920). The trial court, consequently, did not err in denying the motion for a new trial, based on the usual general grounds and five special grounds, which are but elaborations on the general grounds.

Judgment affirmed. *Gardner, P. J., and Townsend, J., concur.*

Decided October 10, 1955.

*Parks & Eisenberg*, for plaintiff in error.

*Wm. R. Harp*, contra.

Mrs. Exie Gibbs brought an action for damages against Lincoln Discount Company of Georgia, Inc., and the material allegations of her petition as finally amended are substantially as follows. The defendant has damaged the plaintiff in the amount of $830.76 by reason of the following facts: On or about November 5, 1953, the plaintiff purchased a 1951 Ford convertible automobile from Strickland-Frost Motors, Inc., for a purchase price of $1,790.04. On the purchase price, $435 was paid as a "down-payment." In addition $395.76 was paid to the defendant in seven monthly instalments of $56.46 each for the months of November, December, 1953, and January, February, March, April, and May, 1954. The foregoing monthly instalments were paid to the defendant under an agreement whereby the defendant had lent the plaintiff $1,355.04, which was the balance of the pur-

chase price, and the monthly instalments were in repayment of the loan; and these instalments fell due on the 5th of each month. On or about May 1, 1954, the defendant, by and through its agents, repossessed the automobile, at a time when the plaintiff, having paid an instalment on April 5, 1954, was not in arrears. As a result of the defendant's repossession of the automobile under the circumstances alleged, the plaintiff elects to treat the contract between her and the defendant as rescinded, and brings this suit to recover damages in the amount of $830.76 caused by the defendant's repossession of the automobile. The plaintiff's copy of the loan agreement and sales contract were in the automobile at the time it was repossessed, and the defendant is notified to produce the papers in court.

The defendant answered, denying the allegations of the petition, and by way of cross-action alleged the following: On October 2, 1953, Strickland-Frost, Inc., entered into a conditional-sale contract with Mrs. William B. Gibbs, the plaintiff, and William T. Crawford, the plaintiff's son, covering a described automobile. The stated purchase price for the automobile was $1,789.04, of which $434 is shown as having been paid on delivery of the automobile, and the balance of $1,355.04 was to be paid in 24 monthly instalments of $56.44 each, commencing on November 5, 1953, and on the same date of each successive month thereafter. In connection with the conditional-sale contract, the plaintiff and her son executed a promissory note to pay Strickland-Frost the payments described. After the execution of the note and the conditional-sale contract by the plaintiff and her son, the defendant purchased the note and conditional-sale contract from Strickland-Frost. The plaintiff and/or her son commenced repayment of the note beginning November 5, 1953, and continued to make payments through May 5, 1954. On May 31, 1954, the plaintiff communicated with the defendant's office and instructed the defendant to go to Hunter Air Force Base at Savannah, Georgia, and repossess the car from her son, as he could not pay for it, and that he was in the armed forces and was about to remove himself from the State. On June 1, 1954, the defendant, through its agent, repossessed the automobile from the plaintiff's son, who voluntarily surrendered it to the defendant's agent. In the exercise of its power contained in the conditional-

sale contract, the automobile was sold for $450 on June 11, 1954. The plaintiff refused to continue the payments on the car in accordance with the note and conditional-sale contract, and it was only after the plaintiff failed to perform her obligations under the contract and after the payment for June had become more than three days in default that the defendant exercised its power of sale. By reason of the plaintiff's breach of contract, the defendant has been damaged in the sum of $384.73. The plaintiff and/or her son paid a total of $395.91 by monthly instalments against the note and conditional-sale contract, leaving a balance due of $959.13 at the time of repossession and sale of the automobile. The defendant received $450 as the proceeds of the sale of the automobile and further received $124.40 as a rebate of insurance premium unearned, all of which has been credited on the unpaid balance due by the plaintiff.

Upon the trial of the case before the court without the intervention of a jury, the court made the following findings of fact and law and entered judgment for the plaintiff in the amount of $457.78:

"On October 2, 1953, plaintiff purchased from Strickland-Frost, Inc., an automobile for her son, William P. Crawford, a member of the armed forces stationed at Savannah, Georgia, making a down payment of $435 on the purchase price. The same was delivered to said son on the date of purchase. Defendant financed the balance, taking a conditional bill of sale wherein plaintiff agreed to pay the balance due in 24 monthly instalments of $56.46 each. William P. Crawford executed the instrument along with plaintiff, but the loan was made on the faith of plaintiff's credit and bill of sale executed to her. The instrument was dated October 2, 1953, the first instalment falling due on November 5, 1953, and on the same day of each succeeding month.

"On May 2, 1954, at a time when no default in the instalment payments had occurred, an officer of the defendant went to Savannah and demanded of William P. Crawford the possession of the automobile. Crawford acceded to such demand, signed the transfer of title contained in a form which was a part of the registration certificate issued in his name, piloted defendant's said officer to the entrance of the military post when he (the agent) drove the automobile to Atlanta, placing it on the used

car lot of Strickland-Frost, Inc. Subsequently, and on the 11th day of June, 1954, plaintiff sold the automobile to Strickland-Frost for $450.

"William P. Crawford made an allotment of $45 per month to plaintiff from his pay as a member of the armed forces, to which she was entitled as dependent under current acts of Congress. There was no agreement that this fund be used to pay the instalments due on the automobile and plaintiff was privileged to use it in any manner she wished. She did use it to make the payments.

"This plaintiff was the principal obligor on the promise to pay Lincoln Discount Company and owned the equity of redemption in the automobile.

"(No finding is made whether a tender was made and refused for the reason that such finding is not necessary.)

"The depreciation in value, above natural wear and tear, between the date of purchase and the date of seizure was $259.52. Plaintiff had paid prior to the date on which defendant repossessed the automobile a total of $717.30 on the purchase price.

"Defendant's counsel stated in open court on the trial of the case that defendant rested his defense and his right to take the automobile solely on the voluntary surrender of the same by William P. Crawford, and not on any other provision of the contract which might have entitled defendant to repossess.

"Finding of Law.

"It was competent for either of the persons who appear as joint makers of the instrument to show whether they be principal obligors. *King* v. *McGee,* 99 *Ga.* 621; *Campbell* v. *Rybert,* 46 *Ga. App.* 461; *Duckett* v. *Martin,* 23 *Ga. App.* 631. Since Crawford owned no interest in the automobile he could not bind the true owner by any agreement to relinquish possession. His possession was that of this plaintiff. This rule has been often stated: The rescission of the contract of sale by the seller gives the buyer the right to the return of so much of the purchase price as had been paid, less rent, and less any deterioration in value of the property above natural wear and tear and other damages which may have [been?] sustained while in the hands of the buyer. *Enterprise, etc.* v. *Zalkin,* 154 *Ga.* 97 (4) ; *Snook* v. *Raglan,* 89 *Ga.* 251 (2). Here we are dealing with a controversy between the holder of the title-retention contract and the buyer. From

*Motor, etc.* v. *Johnson,* 61 *Ga. App.* 735 (2), it would appear that the rule would also apply in such relationships. This court may apply the equitable principles referred to by Mr. Justice Lamar in *Lytle* v. *Scottish, etc.,* 122 *Ga.* 458, since such principles are urged defensively and [the case?] does not involve the grant of affirmative relief. *Porter* v. *Davey, etc.,* 34 *Ga. App.* 354 (p. 357); *Burnett* v. *Davis, etc.,* 124 *Ga.* 541 (p. 544).

"An application of this rule will, on these findings of fact require a judgment for plaintiff in accordance therewith."

The defendant's motion for a new trial, based on the usual general grounds and five special grounds, which are but elaborations upon the general grounds, was denied, and it excepted.