Martin Evans, J.
Motion for summary judgment, based on four equipment leases, and on a guarantee by the individual defendants. A separate cause of action is based on each of the leases, and on the guarantee.
With respect to the first cause of action, defendant’s answering affidavit urges that the machine subject to the lease broke down and that plaintiff did not repair or maintain it. It also urges that plaintiff breached certain warranties that were made, expressly and impliedly, to the effect that the equipment was merchantable; i.e., fit for the ordinary purposes for which the equipment was to be used, and that it was fit for the particular use intended by defendant. Although this is set forth in somewhat conclusory fashion, nevertheless it would be sufficient to raise a question of fact unless the warranties alleged have either been properly disclaimed, or are barred of proof by application of the parol evidence rule.
The lease, which is in a standard printed form (although, as between these parties, probably not for a contract of adhesion) *228 provides in pertinent part, that “ Hertz has made no representation or warranty with respect to the suitability or durability of any such item of equipment for the purposes and uses of lessee, or any other representation or warranty, express or emplied, with respect thereto.”
The threshold question, then, is whether or not the agreement of lease is subject to the rules of the Uniform Commercial Code. If it is, the disclaimer of warranties set forth in the lease must be tested in the light of the provisions of section 2-316 of the Uniform Commercial Code to determine their validity.
The lease, for a period of five years, is of equipment with a cost price of $5,009.37. The total payments during the term of the lease, to the lessor, are $1,325.52 annually, for a total payment of $6,636.60 during the lease term. Renewal terms of one year each, at the option of the lessee (and apparently forever should the lessee so desire) are at an annual rate of $150.28. In lieu of renewal, lessee has the obligation of returning the equipment, at its expense, to lessor. Probably, although this does not appear in the papers, the cost of return is greater than the annual renewal charge.
Thus, the right of exclusive use of this equipment may belong to the lessee indefinitely; at least, until the equipment no longer has any market or use value.
The obligation of maintenance, of repair, of the payment of all taxes incident to the obtaining and to the use of the machine (including “ sales ” taxes) is imposed on the lessee.
Whether or not this lease is merely intended as security (Uniform Commercial Code, § 1-201, subd. [37]; cf. Matter of Merkel, Inc., 46 Misc 2d 270) or was intended as a sale (Canadair Ltd. v. Seaboard World Airlines, 43 Misc 2d 320) need not be determined on this motion; nor is it necessary for the purposes of this decision to adopt the language in Matter of Pennsylvania Whiskey Distr. Corp. v. Bruckman (256 App. Div. 781, 783) to the effect that a “ sale is defined as any transfer of title or possession, or both, for a consideration” since that case relied on Matter of Sears, Roebuck & Co. v. McGoldrick (279 N. Y. 184) and involved the application of a statute which made such definition for taxation purposes.
Equipment leasing is a recent device whereby users of goods are enabled to have sole and exclusive use thereof for such periods of time as are economically beneficial to them at advantageous costs. It has become a widely used substitute for purchase, with the lessor, in economic realty, taking the place of a financing agency and the lessee paying the equivalent *229 of the full purchase price, plus interest, within the minimum lease period. The lessee, in effect, is the true purchaser. Under present tax laws, which appear to be the basis on which these arrangements are made, it is foreseeable that this method of transferring the right to use goods will encompass a sizeable portion of the volume of commercial transactions which have the use of goods (rather than their consumption) as their immediate economic end.
In view of the great volume of commercial transactions which are entered into by the device of a lease, rather than a sale, it would be anomalous if this large body of commercial transactions were subject to different rules of law than other commercial transactions which tend to the identical economic result.
The framers of the Uniform Commercial Code, and the Legislature in adopting it, clearly recognized that one of its purposes was: “To simplify, clarify and modernize the law governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage and agreement of the parties ” (Uniform Commercial Code, § 1-102, subd. [2]).
The official comment to subdivisions (1) and (2) states that: “It is intended to make it possible for the law embodied in this Act to be developed by the courts in the light of unforeseen and new circumstances and practices. ’ ’
That provisions of uniform acts have been extended to transactions which are within their intent, although perhaps not within their words, is clear (Agar v. Orda, 264 N. Y. 248).
The Uniform Commercial Code itself has been given extra-legislative effect, and adopted as the best source of what may be termed “Federal Common Law” (United States v. Wegematic Corp. 360 F. 2d 674 [C. A. 2d, 1966]) despite the absence of any Federal legislation adopting the code as the basis for transactions with the government. The court there said (p. 676): “We find persuasive the defendant’s suggestion of looking to the Uniform Commercial Code as a source for the ‘ federal ’ law of sales. The Code has been adopted by Congress for the District of Columbia, 77 Stat. 630 (1963), has been enacted in over forty states, and is thus well on its way to becoming a truly national law of commerce * * * When the states have gone so far in achieving the desirable goal of uniform law governing commercial transactions, it would be a distinct disservice to insist on a different one for the segment of commerce, important but still small in relation to the total, consisting of transactions with the United States.”
*230 Extending the rules embodied in the code to a transaction not within the code, the court in Vitex Mfg. Corp. v. Caribtex Corp. (377 F. 2d 795, 799 [1967]), which was an action for damages resulting from a breach of contract to supply wool for processing, said: “ While this contract is not controlled by the Code, the Code is persuasive here because it embodies the foremost modern legal thought concerning commercial transactions. ’ ’
The very wording of section 2-102 of the code, defining the scope of the article, states: 1 ‘ Unless the context otherwise requires, this Article applies to transactions in goods ”. Clearly, a ‘ ‘ transaction ’ ’ encompasses a far wider area of activity than a 1 ‘ sale, ’ ’ and it cannot be assumed that the word was carelessly chosen. The 1955 Report of the Law Revision Commission, at page 363 reveals that the “ property ” or “ title ” concept is of negligible importance under article 2; and indeed a reading of the article leads to the conclusion that this was the intent. The code considers the duties, rights and remedies arising from a transaction as of primary importance, and relegates the concept of ‘£ title ” to a far lesser status than it had under earlier common law and under the Uniform Sales Act. The use in some sections, of the words, ‘1 contract for sale ’ ’, and in others, of the word £ ‘ contracts ’ ’, can also be taken to mean that the scope of the article was not limited to a transaction involving solely a ££ sale ” with “ title ” and ££ property ” as its symbols and marks.
That the provisions of the Uniform Commercial Code may be extended by analogy to cases within the intent of the code has been foreseen by the Bar (see 5. Am. Bus. L. J. 287 [Winter, 1967]; 13 UCLA L. Rev. 125 [Nov., 1965]; 23 Business Lawyer [A.B.A.] 812 [April, 1968]).
Uniformity in the construction and application of the code among the States has also been mandated by the Legislature (Uniform Commercial Code, § 1-102, subd. [2], par. [c]), and ££ Therefore, sister-state interpretations of the Code arc more than mere persuasive authority.” (Armstrong Co. v. Janburt Embroidery Corp., 97 N. J. Super. 246, 259.)
In Sawyer v. Pioneer Leasing Corp. (244 Ark. 943, rehearing den. 430 S. W. 2d 457) the Supreme Court of that State, considering all the policy questions involved, held that an equipment lease of a nature similar to the one at bar was subject to the provisions of article 2 of the code; and in Electronics Corp. of Amer. v. Lear Jet Corp. (55 Misc 2d 1066) Mr. Justice Loreto held that under Massachusetts law, an *231 equipment lease was subject to the provisions of § 2-302 of the code.
A consideration of the applicable law, and of economic reason, leads this court to conclude that article 2 of the Uniform Commercial Code, to the extent that its provisions can be considered applicable, governs the equipment lease before the court.
The disclaimer of warranties on the part of the plaintiff, in the words which have been set forth, is in type which is of the same size and style of print, as a part of a much larger paragraph, and in the same size and style of type as the remainder of the contract. They do not appear, in this contract, to have been either specifically bargained for, or to be 1 ‘ conspicuous ’ ’ under the definition set forth in subdivision (10) of section 1-201 of the code. (See Zabriskie Chevrolet v. Smith, 99 N. J. Super. 441; Boeing Airplane Co. v. O’Malley, 329 F. 2d 585; also, see, Hunt v. Perkins Mach. Co., 352 Mass. 535.)
That implied warranties may arise in the course of leasing or bailment transactions has long been the settled law of this State,, despite occasional language of lower courts to the effect that a warranty is solely an incident of a “ sale.” (Matter of Casualty Co. of Amer. [Bliss Co. Claim], 250 N. Y. 410; Hoisting Engine Sales Co. v. Hart, 237 N. Y. 30; Standard Oil Co. of N. Y. v. Boyle, 231 App. Div. 101; Farnsworth, “ Implied Warranties of Quality in Non-Sales Cases ”, 57 Col. L. Rev. 653.)
The clause chosen by plaintiff in its contract of lease, therefore, does not modify or exclude such implied warranties of merchantability or of fitness for use as may exist in this transaction (Uniform Commercial Code, § 2-316) or any express warranties, if any were made to defendant by the plaintiff during the course of the negotiations leading to the contract. Whether such express warranties were made, or whether the implied warranties were either nonexistent, or modified or excluded by the actions of the parties prior to the contract, (Uniform Commercial Code, § 2-316, subd. [3], pars, [b], [c]) are matters of fact which cannot be decided on this motion for summary judgment, but as to which the parol evidence rule, urged by plaintiff herein, may not be applicable on trial by reason of the legal nonexistence of the disclaimer clause.
For the foregoing reason, the motion for summary judgment, insofar as it refers to the first cause of action, is denied.
With respect to the second, third, and fourth causes of action, plaintiff has alleged and set forth evidence that defend *232 ant failed to make the payments due under the respective leases; and plaintiff has “accelerated” the balance due and seeks its full measure of damages.
Defendant’s officer avers, however, that such payments were tendered to plaintiff, but that plaintiff refused to accept them unless payment was also tendered as to the lease referred to in the first cause of action. Each lease being apparently independent of the others, defendant argues that the refusal by plaintiff to accept such tendered payment unless defendant made payment under a lease which it claims had been breached by plaintiff, was an improper refusal. The court agrees with defendant that this creates a question of fact with respect to the second, third, and fourth causes of action as to whether plaintiff had the right to refuse the tender and to consider said leases terminated; and without passing on the defenses or counterclaims is constrained to and does deny the motion insofar as it seeks full judgment on these latter causes of action. The motion for judgment with respect to the cause of action on the guarantees, must, therefore be denied.
The remaining points raised by the defendant, although not necessary to the foregoing disposition, have been considered by the court. The claim of res judicata by reason of a prior disposition of a similar motion is without foundation. ■ A review of the papers shows that that prior decision was without prejudice to renewal upon proper papers and in compliance with rule 6 of the rules of this court. Study of the present papers indicates that the papers on which it is made, and the service of a memorandum under rule 6, were proper and sufficient to enable the court to consider this matter without prejudice to any .right of the parties. The affidavit of defendant, but not its answer, makes the point that the last three named defendants, who appear from the papers to be guarantors, have not been served. Defendants Howard and Anne Denney do not appear to be parties to the guarantee signed by William Johnson; and as to Robert Brown, his liability being “ joint and several” he is not a necessary party under CPLR 1001. This argument by defendant is of no legal significance herein.