## BONA ET AL. *v.* GRAEFE ET AL.

[No. 103, September Term, 1971.]

*Decided January 11, 1972.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*William A. Franch,* with whom were *Goldsborough & Franch* and *Louis M. Strauss* on the brief, for appellants.

*Robert E. Cadigan,* with whom were *Smith, Somerville & Case* on the brief, for appellee G. Edward Graefe. *Donald L. Merriman,* with whom were *Merriman,*

*Crowther & Merriman* on the brief, for appellee Royce Distributors, Inc.

SINGLEY, J., delivered the opinion of the Court.

Rudolph V. Bona, who sustained serious injuries when he was thrown from a runaway golf cart, brought suit in the Circuit Court for Anne Arundel County. The defendants were Royce Distributors, Inc. (Royce), the owner of the cart; G. Edward Graefe, the golf professional at and manager of the golf course, to whom the cart had been leased by Royce, and by whom it was subleased to Bona, and James J. Carrigan, who was operating the cart at the time of the accident. One count of the declaration sounded in negligence against all three defendants; a second count, against Royce and Graefe only, alleged breach of warranty, and a third, also against Royce and Graefe, sought to impose strict liability. A fourth count, dismissed by counsel at trial, asserted a claim of Mrs. Bona for loss of salary while caring for her husband. The fifth count was the joint claim of Mr. and Mrs. Bona for loss of consortium.

At the end of the plaintiff's case, the trial court entered directed verdicts in favor of Royce and Graefe on counts one, two, three and five, and Carrigan rested. The case against Carrigan went to the jury, which brought in a verdict in his favor. Mr. and Mrs. Bona have appealed.

The appeal comes to us on a narrow question: was the trial court in error when it entered directed verdicts in favor of Royce and Graefe on the second (breach of warranty) and the third (strict liability) counts of the declaration?

On a Sunday in August of 1969, Bona, who had been a member of the South Sherwood Forest Golf Club for several years, where he played two or three times a week, was a member of a foursome which planned to play the course that day. Two golf carts were rented: one by Bona, which Carrigan operated; another by Fred A. Dammeyer and Theodore B. Foster, which Dammeyer

operated. An employee of Graefe's removed Bona's cart from the storage area, and drove it around the putting green. It was there that the employee said he tested the brake and found it working properly. Carrigan said he saw the employee test the cart; Bona said that he was not aware of this. The cart was delivered to Carrigan near the first tee. He drove it to the first tee; he and Bona teed off, and both of them got in the cart and headed for the first green, following the cart occupied by Dammeyer and Foster. There was testimony that players customarily took a macadam-covered path about 60 feet long, which descended a steep grade and then made a left turn at the foot of the descent where the path ended, in order to reach the fairway.

Carrigan had testified on deposition that he applied the brake when he reached the crest of the hill and "there wasn't any." He shouted to the occupants of the other golf cart, which Carrigan thought was about 10 feet ahead of him. They pulled to the right, he passed them and ultimately struck an earth embankment, where Bona was thrown out just before the cart tipped over.

It will be remembered that Bona's appeal does not question the correctness of the jury verdict entered in Carrigan's favor, see *Miller v. Robinson*, 241 Md. 335, 216 A. 2d 743 (1966); Annotation, *Liability For Injury Incurred In Operation Of Power Golf Cart*, 17 A.L.R.3d 1430 (1968), or of the directed verdicts entered in favor of Royce and Graefe on the negligence count, but rather rests on the argument that the case against them should have gone to the jury on breach of warranty and strict liability. Unhappily for Bona, the route which he must take to achieve his goal is steeper than the path where the accident occurred.

Perhaps no uniform act was the subject of more extensive study and debate prior to its adoption than the Uniform Commercial Code (the UCC), Maryland Code (1957, 1964 Repl. Vol.) Art. 95B. The express warranty provisions of § 2-313 and the warranty of fitness implied

by § 2-315 are parts of Article 2 of the UCC, which is clearly limited to sales of goods. Bona would have us read the sections as being also applicable to bailments for hire. Perhaps one answer to this contention, like A. P. Herbert's Lord Mildew's, is that if the draftsmen had intended the sections to apply to leases of goods as well as to sales, they should have said so.[1]

A hint of what the draftsmen may have had in mind can be found in Official Comment 2 to UCC § 2-313, which says, in part:

> "Although this section [dealing with express warranties] is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Subtitle are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract. They may arise in other appropriate circumstances such as in the case of bailments for hire, whether such bailment is itself the main contract or is merely a supplying of containers under a contract for the sale of their contents. * * * [T]he matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise."

It seems anomalous to us that many authors of the texts and commentaries seem to take the stance that there should be no differentiation between sales and bailments under Article 2 of the UCC, reasoning either by analogy or by interpretation, Murray, *Under the Spreading Analogy of Article 2 of the Uniform Commercial Code,* 39 Fordham L. Rev. 447, 449 (1971) ; 1 *Anderson on the Uniform Commercial Code* § 2-314:96, § 2-314:100 (2d ed. 1970) ; Comment, *The Extension of Warranty*

---

1. "If Parliament does not mean what it says it must say so." A. P. Herbert, *The Uncommon Law* (1936) at 192.

*Protection to Lease Transactions,* 10 B. C. Ind. & Com. L. Rev. 127, 134 (1968) ; Farnsworth, *Implied Warranties of Quality in Non-Sales Cases,* 57 Colum. L. Rev. 653, 655 (1957). A vigorous dissent may be found in Comment, *Application of Article 2 of the Uniform Commercial Code to Leases,* 1969 Wash. U. L. Q. 90 (Winter, 1969). Of at least tangential interest are Comment, *Dual Nature Contracts and the Uniform Commercial Code,* 28 Md. L. Rev. 136 (1968), which discusses the application of the "essence" test to divisible contracts, and 2 Harper and James, *Law of Torts,* § 28.19, at 1577 (1956), which advocated extending Uniform Sales Act warranties to bailments for hire.

For us to accept Bona's contention would take us beyond the limits of judicial restraint and into the area of judicial legislation, a journey which we refused to make in *Howard v. South Baltimore General Hospital,* 191 Md. 617, 619, 62 A. 2d 574 (1948). In similar vein, we declined to extend by analogy the warranty implied by the UCC to the sale of goods to the sale of real estate, saying that if there were to be a change, it should be by the legislature and not by the courts, *Allen v. Wilkinson,* 250 Md. 395, 398, 243 A. 2d 515 (1968).[2]

Concededly, a few courts have read UCC § 2-315 as being applicable to cases where a chattel is the subject of a lease rather than a sale. Some of these cases may be found in CCH *Products Liability Reporter* ¶ 1186, at 1052-53 (1970). Most frequently these are instances where the arrangement, although called a lease, is analogous to a sale in that the rental installments are equivalent to the purchase price plus interest, or a purchase is contemplated at the end of the lease period, and the lessee assumes obligations more consistent with ownership than with bailment, *KLPR TV, INC. v. Visual Electronics Corp.,* 327 F. Supp. 315 (W.D. Ark. 1971) ; *Hertz Com'l Leas. Corp. v. Transportation Cr. Cl. H.,*

---

2. *See,* however, Code (1957, 1966 Repl. Vol., 1971 Cum. Supp.) Art. 21, § 95B for an instance where this hiatus was at least partially bridged by the Legislature by Ch. 151 of the Laws of 1970.

59 Misc. 2d 226, 298 N.Y.S.2d 392 (N.Y.C. Civ. Ct. 1969) ; *Sawyer v. Pioneer Leasing Corp.,* 244 Ark. 943, 428 S.W.2d 46 (1968).

Another class of bailor-bailee cases is bottomed on strict liability in tort, *Price v. Shell Oil Co.,* 85 Cal. Rptr. 178, 466 P. 2d 722 (1970) ; although on occasion, passing reference may be made to the implied warranties of the UCC, *Cintrone v. Hertz Truck Leasing & Rental Service,* 45 N. J. 434, 212 A. 2d 769 (1965). *Delaney v. Towmotor Corp.,* 339 F. 2d 4 (2d Cir. 1964) invoked the doctrine of strict liability in a case involving what the defendant claimed to be a gratuitous bailment.

There is a third type of case in which one who leases goods has been held to have impliedly warranted either under common law concepts or by analogy to the UCC the suitability of the chattel leased, *W. E. Johnson Equip. Co. v. United Airlines, Inc.,* 238 So. 2d 98 (Fla. 1970). *Simpson v. Powered Products of Mich., Inc.,* 24 Conn. Super. 409, 192 A. 2d 555 (Ct. C. P. 1963) reached a similar result under the Uniform Sales Act.

Other cases may give lip service to breach of warranty but usually require proof co-extensive with that required in a negligence action, *Price Boiler and Welding Co. v. Gordon,* 138 F. Supp. 43 (E.D. Mich. 1956).

Another case to which we have been referred which applied UCC thinking to the lease of a chattel is *Baker v. City of Seattle,* 79 Wash. 2d 198, 484 P. 2d 405 (1971) which also involved an injury suffered by the lessee of a golf cart when there was a brake failure. There the court struck down a disclaimer contained in a lease, analogizing the lease to a sale, by applying UCC § 2-316 and § 2-719.

A helpful analysis of these divergent views may be found in 2 Frumer and Friedman, *Products Liability* § 16A [4] [iii], at 3-196.3 (1970).

Maryland seems never to have adopted what has been the general rule elsewhere: that the bailor of a chattel to be used by the bailee for a particular purpose known

to the bailor impliedly warrants the reasonable suitability of the chattel for the bailee's intended use of it, 8 Am. Jur. 2d *Bailments* § 144, at 1039 (1963); Annotation, *Warranties in connection with leasing or hiring of chattels,* 68 A.L.R.2d 850, 854 (1959). Perhaps the reluctance of our predecessors to embrace this rule reflects a preoccupation with analogous principles which are well established in our landlord and tenant cases: that generally the lessor of real property does not impliedly warrant that it is fit for habitation, *State of Md. ex rel. Pumphrey v. Manor Real Estate & Trust Co.,* 176 F. 2d 414 (4th Cir. 1949); that a landlord does not impliedly covenant to make repairs, *Miller v. Howard,* 206 Md. 148, 110 A. 2d 683 (1955), and that ordinarily, a landlord will be answerable in damages in tort only if his tenant is injured on the demised premises as a result of the landlord's negligent breach of a contractual duty to make repairs, *Sacks v. Pleasant,* 253 Md. 40, 44, 251 A. 2d 858 (1969).

Consequently, the liability of the lessor of a chattel, as distinguished from that of a vendor, if it is to be imposed at all in Maryland, must be imposed in a tort action for negligence. It is not enough for a plaintiff to prove that a lessor failed to make proper inspections; he must prove either that the lessor knew of the defect or that a reasonable inspection, if made, would have disclosed the defect, *Smith v. Kelly,* 246 Md. 640, 644, 229 A. 2d 79 (1967); *Kaplan v. Stein,* 198 Md. 414, 421, 84 A. 2d 81 (1951); *State ex rel. Piper v. Henson Flying Service,* 191 Md. 240, 248, 60 A. 2d 675, 4 A.L.R.2d 1300 (1948); *Milestone System v. Gasior,* 160 Md. 131, 136, 152 A. 810 (1931). This may well be the weight of authority, Annotation, *Liability of bailor of automotive vehicle or machine for personal injury or death due to defects therein,* 46 A.L.R.2d 404, 443 (1956).

Bona has not appealed from the entry of a directed verdict in favor of Royce and Graefe on the negligence count, with the consequence that the question whether

Royce and Graefe used reasonable care is not directly before us. There was testimony, however, that the carts were inspected and serviced by employees of Royce on a weekly basis, and that Graefe's employee, as was his custom, drove Bona's cart from the storage shed to a point near the first tee, during the course of which he tested the brake and found it working properly. This evidence, taken with the lack of proof that the service and inspection procedures if properly done would have detected the defect, or that there was a defect of which Royce or Graefe had knowledge, would seem to have amply justified the trial court's conclusion that there was no evidence that Royce and Graefe had failed to use ordinary care.

As regards Bona's contention that the court below was in error in not permitting the case to go to the jury on the question of strict liability in tort, we have, on two occasions in the past, declined to espouse the doctrine formulated by 2 Restatement, *Torts* 2d § 402 A, at 347 (1965), *Myers v. Montgomery Ward & Co.*, 253 Md. 282, 252 A. 2d 855 (1969) ; *Telak v. Maszczenski*, 248 Md. 476, 237 A. 2d 434 (1968). Despite the fact that the principle enunciated by § 402 A is gaining acceptance, see Annotation, *Products Liability: Strict Liability in Tort*, 13 A.L.R.3d 1057 (1967), there is even less reason why it should be adopted in this case.

Here again the difficulty is that § 402 A is directed at one who *sells* a product which, because of its defective condition, is unreasonably dangerous to the user, and reaches the user without substantial change in the condition in which it is sold. *Speyer, Inc. v. Humble Oil & Refining Co.*, 275 F. Supp. 861 (W.D. Pa. 1967), *aff'd*, 403 F. 2d 766 (3d Cir. 1968) held, quite properly we think, that § 402 A is not applicable to a lessor. If Bona, as a lessee of a chattel, has a right of action against Royce or Graefe as lessors, it can only be asserted under 2 Restatement, *Torts* 2d § 408:

"One who *leases* a chattel as safe for immediate

use is subject to liability to those whom he should expect to use the chattel, or to be endangered by its probable use, for physical harm caused by its use in a manner for which, and by a person for whose use, it is leased, *if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it."* (emphasis supplied)

In essence, this is the rule of *Smith v. Kelly; Kaplan v. Stein* and *State ex rel. Piper v. Henson Flying Service*, all *supra*. By positing his appeal on breach of implied warranty and strict liability in tort, Bona would seem to concede that he had not and could not adduce the proof required by § 408.

We conclude that the trial court correctly applied the law when it entered directed verdicts in favor of Graefe and Royce on the implied warranty and strict liability counts.

*Judgments affirmed, costs to be paid by appellants.*