## 50105. REDFERN MEATS, INC. v. HERTZ CORPORATION et al.

MARSHALL, Judge.
The question involved in this appeal is whether or not the implied warranty provisions of the Uniform Commercial Code apply to the transaction between these parties.

Redfern entered into a "Truck Lease Service Agreement" with Hertz for the rental of several tractors and refrigerated trailers. One such trailer was put into service by Redfern on June 20, 1973. While transporting

frozen meat from Atlanta to North Carolina on June 26, 1973, the refrigeration unit on the trailer failed, causing the spoilage of meat alleged to be worth $7,574.47.

The leasing agreement contained a paragraph entitled "Non-Liability for Contents." It provided: "Hertz shall not be liable for loss of or damage to any property left, stored, loaded or transported in or upon any vehicle furnished by Hertz to Customer pursuant to this Agreement, whether or not due to the negligence of Hertz, its agents or employees, and Customer hereby agrees to hold Hertz, its agents and employees, harmless from and to defend and indemnify them from and against all claims based upon or arising out of such loss or damage." This paragraph was listed among thirty-one other paragraphs and not distinguished from them by lettering, type size or otherwise.

Redfern brought suit against Hertz in two counts, alleging in Count 1 that the damage was caused by Hertz's breach of implied warranty of merchantability and implied warranty of fitness for a particular purpose. In Count 2 it alleged Hertz breached its bailor's warranty under Code § 12-204 ("The obligations of the bailor of things are . . . to warrant the right of possession, and that the thing bailed is free from any secret fault rendering it unfitted for the purposes for which it is hired.") Redfern attached a copy of the agreement to its complaint as well as copies of advertising material used by Hertz in promoting its leasing service. Hertz answered, inter alia, denying liability for the damage and asserting that the "non-liability" clause, supra, exonerated it from loss of contents of the trailer. Redfern moved for summary judgment as to liability, attaching affidavits of the driver of the truck, its sales manager, and its president. Hertz moved for judgment on the pleadings on the grounds of the "non-liability" clause. The trial court denied Redfern's motion for summary judgment and granted Hertz's motion for judgment on the pleadings and dismissed the action. Redfern appeals, enumerating as error, (1) the denial of its motion, and (2) the granting of Hertz's motion. *Held:*

1. Redfern contends that its motion for summary judgment should have been granted because there remain

no issues of material fact and the facts show Hertz breached the implied warranties of the Uniform Commercial Code. However, the denial of Redfern's motion for summary judgment was not certified for direct appeal and is only enumerated as error. See Code Ann. § 81A-156 (h). Absent a certificate on this denial, we cannot review the factual contentions concerning the nature of the defect, whether the defect existed when Redfern took possession, and whether it caused the damage incurred. *Allen v. Alco Finance,* 131 Ga. App. 545 (2) (206 SE2d 547); *Moulder v. Steele,* 118 Ga. App. 87 (162 SE2d 785).

2. In considering the remaining enumeration of error (the granting of Hertz's motion for judgment on the pleadings), we accept as true all of Redfern's allegations of fact in its pleadings and all reasonable inferences and intendments from those facts. "The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain." Wright & Miller, Federal Practice and Procedure, § 1367, p. 685 (1969). In effect, Hertz's motion means that even if Redfern's factual allegations are true, Hertz is not liable and is entitled to judgment as a matter of law. We, therefore, do not consider factual matters outside the pleadings. These matters consist of three affidavits submitted by Redfern in support of its motion for summary judgment. Whether or not the trial judge considered these affidavits in granting Hertz's motion for judgment on the pleadings and treated it as a summary judgment under Rule 56, the standard applied in both motions is the same, i.e., taking all facts and inferences against Hertz and in favor of Redfern, is Hertz entitled to judgment as a matter of law. Both motions result in an adjudication of Redfern's claim. And in this case the affidavits contain facts which are not in dispute, are included in Redfern's allegations, or have no bearing on the legal issue involved. Furthermore, it is apparent that the trial judge granted Hertz's motion because Hertz had disclaimed all warranties — a question of law — and not because there was no breach of these warranties.

3. Count 2 of Redfern's complaint seeks recovery from Hertz on the theory that if Hertz is considered a

bailor of the refrigerated trailer it breached its warranty imposed by Code § 12-204, supra. It does not appear that this Code section has been repealed by the Uniform Commercial Code, Code Ann. §§ 109A-10—103, 109A-10—104, and it would apply in addition to warranties under the UCC. Hertz contends that since the disclaimer provision of the UCC (Code Ann. § 109A-2—316) does not apply to a Code § 12-204 warranty, its liability under such warranty has been disclaimed under the "non-liability" clause of the agreement.

We agree. The liability of a lessor may be exculpated by such a clause, even when the damage is caused by the lessor's own negligence, as long as the exculpatory clause is not contrary to public policy and explicitly shows an intent to include the lessor's own negligence, and that negligence does not amount to wilful and wanton misconduct. *Robert & Co. v. Pinkerton & Laws Co.,* 120 Ga. App. 29 (169 SE2d 360); *Gough v. Lessley,* 119 Ga. App. 275 (166 SE2d 893); *Hawes v. Central of Ga. R. Co.,* 117 Ga. App. 771 (162 SE2d 14); *Batson-Cook Co. v. Georgia Marble Setting Co.,* 112 Ga. App. 226, 230 (144 SE2d 547); *Bohannon v. Southern R. Co.,* 97 Ga. App. 849, 850 (104 SE2d 603). The language here is unambiguous and explicit. There being no allegations of wanton or wilful misconduct on the part of Hertz, and no public interest or public policy violated, we find that the liability of Hertz under the warranty provision of Code § 12-204 has been exculpated. See also *Mays v. C. & S. Nat. Bank,* 132 Ga. App. 602, 608 (208 SE2d 614) where an exculpatory clause was said to have "eliminate[d] any implied warranty of law," even though it did not mention the word "warranty."

However, the exculpatory clause does not eliminate liability of Hertz based on implied warranties under the UCC (Count 1), if the UCC is found applicable to this transaction (see Division 4, infra). Nor do we agree with Hertz's contention that, even if the implied warranties of the UCC do apply, its liability based thereon has been indemnified by the second part of the "non-liability" clause of the agreement. It would be incongruous with the purpose of Code Ann. § 109A-2—316 (the disclaimer of implied warranties section) to permit that which is

directly prohibited (an inconspicuous disclaimer will not eliminate warranty liability) to be accomplished indirectly (by indemnification).

We conclude that even if Hertz is considered bailor of the property, Redfern could not recover on that ground. As to Count 2, the court properly granted Hertz's motion for judgment on the pleadings.

4. In Count 1, Redfern specifically alleges breach of the two implied warranties embodied in Code Ann. § 109A-2—314 and Code Ann. § 109A-2—315. Redfern's right to recover under this count depends upon whether or not the implied warranties of the UCC apply to the transaction. If they do, there is no question that the "non-liability" clause in the agreement, supra, does not meet the requirements of Code Ann. § 109-2—316, and does not disclaim these implied warranties.

Under the "Truck Lease Service Agreement," Redfern agreed to rent several tractors and trailers from Hertz. For the refrigerated trailer in question, Redfern agreed to pay "rental for use" of $77.78 per week plus a mileage charge of 2.4 cents per mile and a refrigeration charge of 38 cents for each running hour per week. Redfern was billed for the total of these charges on a weekly basis.

Redfern was responsible for procuring and maintaining liability insurance, at its sole cost, by an insurer acceptable to Hertz, and the policy was to name Hertz as the insured. In case of accident, Redfern agreed to report to Hertz and to cooperate and to hold Hertz harmless for any liability imposed above the limits of liability. Redfern was not responsible for damage to the vehicles themselves, except when caused by its own agent's carelessness and except for the first $500 on tractors and $100 on trailers damaged by accident or collision.

Redfern was responsible for controlling the conduct of its drivers while operating the equipment. It also agreed to hold Hertz harmless for any fines resulting from violations of any laws while the vehicles were being operated by Redfern.

Hertz was obligated to provide vehicle registration plates, fuel, oil, lubricants and tires and to keep the

vehicles in good mechanical condition and running order. Redfern was required to have the vehicles periodically inspected and serviced at the Hertz Atlanta garage.

In the event of a vehicle becoming disabled Hertz assumed complete responsibility for its repair and agreed to furnish Redfern with a substitute vehicle. Hertz also agreed to supply Redfern with one or more additional vehicles for temporary use as Redfern's business needs required, at an additional cost.

The agreement also contained the following: "18. Cancellation Privilege. Either party shall have the right to cancel this Agreement on any anniversary of the date on which the last vehicle delivered to Customer hereunder shall have entered Customer's service under this Agreement, by giving to the other party, at least sixty (60) days prior to such cancellation date, notice in writing of its intention so to cancel this Agreement.

"Upon delivery of said notice, and the purchase and payment by Customer of the vehicles leased pursuant hereto, this Agreement shall be cancelled. In the event Customer, though delivering to Hertz a notice as aforesaid shall fail to purchase and pay for said vehicles pursuant hereto, this Agreement shall not be cancelled, but shall continue in full force and effect until cancelled or terminated as therein provided.

"(a) In the event either party shall elect to cancel this Agreement, then Customer agrees to purchase the vehicles then covered by this Agreement and Hertz agrees to sell said vehicles to Customer, upon the basis set out in paragraph (b) hereof . . .

"(b) In the event of cancellation of this Agreement, the purchase by Customer of the vehicles covered hereby shall be for the Schedule A Value as specified in the applicable Schedule A, less depreciation, computed upon the basis of the time which has elapsed from the date the vehicles shall have entered the service of Customer until the effective date of such cancellation . . . and at a depreciation rate set forth in the applicable Schedule A; provided, however, that the price to be paid by Customer for such vehicles shall not, in any event, be less than fifteen (15%) of the Schedule A Value as set forth in the applicable Schedule A; and provided further, that if a

vehicle has been in service of Customer under this lease for eight years or more, Customer shall not be obligated to purchase such vehicle upon cancellation of this agreement as to such vehicle, or cancellation as to all vehicles, nor shall he have an option to purchase such vehicle."

Schedule A listed the value for the particular trailer in question at $15,287. The depreciation rate set forth in Schedule A was $34.14 per week. The lease was for no specified period except as provided in the above-quoted paragraph 18. The language used throughout the agreement refers to the transaction as a lease. In addition, the following sentence is found: "It is expressly understood and agreed that this is a contract of leasing only and that Customer has by these presents acquired no right, title or interest in or to the property described in the Agreement."

Code Ann. § 109A-2—314 provides that ". . . a warranty that the goods shall be merchantable is implied in a *contract for their sale* if the *seller* is a merchant with respect to goods of that kind." (Emphasis supplied.) Code Ann. § 109A-2—315 also uses the words "seller" and "buyer." " 'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time. A 'sale' consists in the passing of title from the seller to the buyer for a price (109A-2—401)." Code Ann. § 109A-2—106 (1). A "seller" as used therein is "a person who sells or contracts to sell goods." Code Ann. § 109A-2 —103 (1) (d).

It would appear from a literal reading of these Code sections that they were intended to apply only to "sales" and not leases, even though Code Ann. § 109A-2—102 states that "Unless the context otherwise requires, this Article applies to *transactions in goods.*" (Emphasis supplied.)[1] And we must respect what was obviously the

---

[1] It was said in Hertz Comm'l Leasing Corp. v. Transportation Credit Clearing House, 59 Misc. 2d 226 (298 N Y S 392, 396) that "clearly, a 'transaction' encompasses a far wider area of activity than a 'sale,' and it cannot be assumed that the word was carelessly chosen."

legislative intent that Art. 2 of the UCC apply only to "sales." But the question unanswered by the Code is whether or not Art. 2 applies to transactions that are analogous to a sale, though denominated something else.

The closest a Georgia authority comes to answering that question was this court's opinion in *Mays v. C. & S. Nat. Bank,* 132 Ga. App. 602, supra. There the defendant agreed to lease a 1971 Cadillac from the assignor of plaintiff bank. Upon defendant's default in rental payments and his surrendering the car to the bank, latter brought suit against him for arrears in payments and for some repairs. Defendant counterclaimed, alleging defects in the car amounting to a breach of implied warranty under the UCC. Since the lease agreement contained an inconspicuous exculpatory clause, the court was confronted with the question of whether not the UCC applied to the transaction, rendering the exculpatory clause impotent. The lease was for 24 months, but there was no provision for purchase at the end of that period. The court, after examining the Code sections involved, concluded: "We hold the present lease agreement leasing an automobile for a period of 24 months, even though it places the burden of repairs, taxes, insurance, etc. upon the lessee is not a sale so defined. Whether it would be, or be construed to be a sale, or analogous to a sale, or equivalent to a sale, if there was a provision to purchase at the termination of the lease we do not decide. [Cits.] Notwithstanding that some other courts have applied the warranty provisions of Article 2 of the Uniform Commercial Code to leases and other similar contracts, we are of the opinion that the specific language of Article 2 of our Georgia Commercial Code and the warranty provisions expressly referring to sales contracts compel a different conclusion. We cannot ignore this specific language, and to do otherwise 'would take us beyond the limits of judicial restraint and into the area of judicial legislation.' Bona v. Graefe, 264 Md. 69, 74 (285 A2d 607). In so ruling we do not hold or decide whether a common law implied warranty is applicable to leases of personal property or not. We merely hold that the restrictions of Code Ann. § 109A-2—316 are not applicable to the lease contract in the present case." *Mays v. C & S. Nat. Bank,*

132 Ga. App. 602, 609, supra.

The *Mays* case specifically does not answer the question in the present case because we have here a provision for purchase at any time the lease is canceled. Relatively few jurisdictions have been confronted with the precise question presented by this appeal. See Ann., 48 ALR3d 668 (1973).

We adopt the approach exemplified in Sawyer v. Pioneer Leasing Corp., 244 Ark. 943 (428 SW2d 46), that the warranty provisions of the UCC are applicable to those chattel leases where the transaction in question is analogous to a sale. In that case the defendant entered into a "Master Lease Contract" with lessor, plaintiff, under which he was to pay $45.32/month for six months for the rental of an ice machine. At the end of the lease period, defendant was to redeliver the ice machine back to the lessor. There was no provision for cancellation. At the trial, an agent for lessor testified that the machine would probably be offered for sale to defendant at the end of the lease period. Expenses for repairs and maintenance were borne by defendant. The agreement also contained an inconspicuous disclaimer. Lessor brought an action against defendant for accrued rental payments pursuant to a default clause in the agreement, and defendant defended on the grounds of breach of implied warranties.

The Arkansas Supreme Court, after examining many authorities (Farnsworth, Implied Warranties of Quality in Non-Sales Cases, 57 Colum. L. Rev. 653 (1957); Hart and Willier, Forms and Procedures Under the Uniform Commercial Code (1966); Fairfield Lease Corp. v. Colonial Aluminum Sales, Inc., 3 U C C Rep. 858 (1966)) concluded: "It is thus clear that there is respectable authority for applying code provisions to some instances *where the transaction is analogous to a sale.*" "We see no reason why, if appropriate lease transactions can properly be governed by the rules applying to sales, the disclaimer section should not also apply. If, in a sales transaction, one is required to exclude an implied warranty of fitness by a writing that is conspicuous, we see no reason why the same provision should not apply to leases that are analogous to a sale." The court was careful to emphasize that its extension of the implied warranties of the UCC

was only to transactions *analogous to a sale.*

This case was followed in KLPR-TV v. Visual Electronics Corp., 327 FSupp. 315, and cited with approval in Hertz Comm'l Leasing Corp. v. Transportation Credit Clearing House, 59 Misc. 2d 226 (4) (298 NYS2d 392). See also Johnson Equipment Co. v. United Airlines, 238 S2d 98 (Fla., 1970).

In adopting the sales analogy approach, we reject the approach taken by other courts which seemingly apply the UCC to all commercial chattel leases. We feel such an approach extends the UCC beyond the boundaries intended by the legislature. See e.g. Baker v. City of Seattle, 79 Wash. 2d 198 (484 P2d 405) (UCC applied to ordinary lease of a golf cart); Stang v. Hertz Corp., 83 N.M. 217 (490 P2d 475) (no distinction made between a "seller" and a lessor); Fairfield Lease Corp. v. U-Vend, Inc., 14 U. C. C. Rep. 1244 (N.Y. 1974) (warranty of fitness for particular purpose apparently applies to any commercial chattel leases), and Hertz Comm'l Leasing Corp. v. Transportation Credit Clearing House, supra, divisions (1), (2), (3) (a lease is a "transaction" under UCC § 2-106 even though not a "sale" under UCC 2-314—2-316). These cases seem to be grounded on the idea that the disclaimer provisions of UCC § 2-316 establish a public policy against the use of disclaimers in all commercial transactions.

We are not prepared to go that far. The sales analogy approach respects the use of the word "sales" as used in the code. We are thus not taking that journey, described in Bona v. Graefe, 264 Md. 69 (285 A2d 607) "beyond the limits of judicial restraint and into the area of judicial legislation." Instead we are attempting to prevent merchants from dodging the requirements of the UCC by selling goods under the guise of a lease, depriving the consumer of the protections intended by the legislature to be afforded him. It is not foreign to Georgia law to construe "leases," with the title reserved in the lessor, as sales, under a nom de plume. *Enterprise Distributing Corp. v. Zalkin,* 154 Ga. 97 (1) (113 SE 409); *Blitch & Newton v. Edwards,* 96 Ga. 606 (24 SE 147); *Ross v. McDuffie & Armstrong,* 91 Ga. 120 (2) (16 SE 648); *Motors Mortg. Corp. v. Purchase-Money Note Co.,* 38 Ga. App. 222

(3) (143 SE 459). "Nor is the transaction changed by the agreement assuming the form of a lease. In determining the real character of a contract, courts will always look to its purpose, rather than the name given it by the parties." *Hays v. Jordan,* 85 Ga. 741, 748 (11 SE 833).

"Today the leasing business flourishes. More and more the individual or business leases one or more articles that in former years would have been purchased. The same business goals often can be reached by lease as well as by purchase." Johnson Equipment Co. v. United Airlines, Inc., supra.

Turning to the present transaction, there are several features which indicate that it is not analogous to a sale. First, the weekly rental price, $77.78, is grossly disproportionate to the weekly credit of $34.14 (depreciation) allowed Redfern toward the purchase price. At the end of the eighth year, Redfern would have paid $33,156.48 in rental payments (plus mileage and refrigeration charges) for a vehicle valued at $15,287, and for which Redfern would have to pay an additional $2,293.05 (15% of value) on cancellation. Only a usurious interest rate added to the weekly depreciation credit could make the weekly purchase price payments the equivalent of the weekly rental payments. Second, all indicia of ownership remained in Hertz. Maintenance and fuel costs, registration, taxes, and repairs all were the responsibility of Hertz. Even the liability insurance policy, though paid for by Redfern, named Hertz as the insured. Furthermore, title remained with Hertz. Third, if a vehicle became disabled, Redfern had no responsibility to repair it or to procure a substitute vehicle. Hertz contends that for these reasons, the contract is one for lease and not for sale.

Regardless of these factors indicating a lease and services contract, we cannot escape the fact that Redfern was required to purchase the vehicle, if, on any anniversary during the lease, Hertz or Redfern felt the agreement should be canceled. See *Wheeler v. Rebel Truck Rental,* 125 Ga. App. 431 (188 SE2d 155), where, under a similar lease, lessor notified lessee of cancellation, *requiring* lessee to purchase the vehicle prior to the end of the lease period. We also note that under

paragraph 22 of the agreement, if Redfern defaulted for five days after being notified of default by Hertz, latter could cancel the agreement and require Redfern to purchase the vehicle in accordance with paragraph 18. In other words, Redfern was locked into a contract to purchase these vehicles whenever Hertz desired and whether or not the vehicles proved to be satisfactory. It was only after eight years that Redfern was not obligated to purchase. But by that time the trailer in question would have depreciated nearly 100% and would be of little value to anyone. In effect, Redfern agreed to purchase the vehicles at some time during the period of their life, after which it would not want to purchase them anyway.

The disparity in rental price and purchase price is attributable to the services performed by Hertz on the vehicles for which Redfern agreed to pay Hertz rather than contract with some third party to perform them. Interest rate is an additional reason for the disparity.

Hertz's retention of title is a misleading feature of this case, because title here did not mean ownership. Hertz had contracted irrevocably to transfer its ownership of the vehicle in question to Redfern at some time in the future. The indicia of alienability is absent from Hertz's claim of ownership. Furthermore, though the passing of title is a part of the Code definition of sale, "title" does not hold the same position as it did under former Georgia sales law. See Code Ann. §§ 109A-2—401 and 109A-2—501 as to the importance of identification of goods to the contract. See also, Kock, Georgia Commercial Practice §§ 4-1 and 4-4 (1964).

Hertz contends that even if the transaction is construed as the equivalent of a sale, the sale is only an incidental aspect of what is really a contract for services. In *Lovett v. Emory University,* 116 Ga. App. 277 (156 SE2d 923) this court held that the furnishing of blood by a hospital in the course of treatment, even though the blood is listed as a separate charge, is not a sales transaction covered by implied warranties of the UCC, but is a contract for services.

*Lovett* is distinguishable because in the case sub judice, the furnishing of the vehicles to Redfern is not incidental to the contract, but is the essence and

dominating purpose of the contract. Redfern did not enter the contract to have vehicles serviced, but to procure a means of transporting frozen meat. That the maintenance of a vehicle is incidental to its procurement needs no further elaboration.

5. Finally, in its supplemental brief, Redfern asserts that it is also entitled to recover on the ground of Hertz's breach of *express* warranties. These warranties were express representations made by Hertz in its advertising brochure prior to the written contract that the refrigeration units would maintain a 0° temperature and that substitute vehicles would be provided at the point of interrupted service.

Even if the express warranty provision of the UCC (Code Ann. § 109A-2—313) was applicable to this transaction, and even if the negation or limitation of these express warranties is unreasonable under the warranty disclaimer provision of the UCC (Code Ann. § 109A-2—316 (1)), nevertheless Redfern would be precluded from proof of these warranties by the parol evidence rule. Code Ann. § 109A-2—202. That section provides that where there is a final written agreement between the parties as to the terms therein, those terms may not be contradicted by a prior agreement, but may be explained or supplemented by consistent additional terms "*unless* the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." (Emphasis supplied.) The agreement here contains such an "integration clause": "This Agreement . . . shall constitute the entire agreement between the parties hereto . . ." Code Ann. § 109A-2—316 (1) specifically states that it is subject to the provisions of the parol evidence rule and, in this case the latter prevails to exclude proof of prior express warranties. See 3 Bender's Uniform Commercial Code Service § 6.06.

We conclude that the transaction between these parties, though not a present "sale," was analogous to a "sale" of the trailer in question at a future time within the meaning of Code Ann. § 109A-2—106 (1), and that the implied warranties of the UCC are applicable. Therefore, as to Count 1, the trial court erred in deciding

as a matter of law that Hertz was not liable to Redfern and the case is reversed and remanded for further hearing on the question of breach of the implied warranties of Code Ann. §§ 109A-2—314 and 109A-2—315.

*Judgment reversed and remanded with direction. Bell, C. J., and Webb, J., concur.*

ARGUED JANUARY 7, 1975 — DECIDED MARCH 12, 1975 — REHEARING DENIED MARCH 31, 1975.

*McClain, Mellen, Bowling & Hickman, William M. Poole,* for appellant.

*Dennis & Fain, Dennis J. Webb, Martin D. Chitwood,* for appellees.