𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## ALVIN V. LEAKE

### v.

## EUGENE MEREDITH

June 6, 1980.

Record No. 780346.

Present: All the Justices.

*Lanier Thurmond (Thurmond & Glass,* on briefs), for appellant.

*Clarence B. Neblett, Jr. (Dennis P. Brumberg; Norma B. Carl; Baer, Neblett, Brumberg & Carl,* on brief), for appellee.

I'ANSON, C.J., delivered the opinion of the Court.

In this appeal, we must determine whether warranty provisions of Virginia's Commercial Code § 8.2-315,[1] which parallels § 2-315 of the Uniform Commercial Code, are applicable to a chattel lease.

Plaintiff, Eugene Meredith, filed a motion for judgment against Alvin V. Leake, defendant, to recover damages for personal injuries sustained when an aluminum extension ladder rented from the defendant broke while being used by the plaintiff. The plaintiff's motion for judgment was premised upon one count of negligence and another count of breach of implied warranty of fitness for a particular purpose. At the conclusion of all the evidence, the trial court ruled, as a matter of law, that the defendant had not been negligent and that the disclaimer of an implied warranty did not meet the conspicuousness requirement of Code § 8.2-316(2).[2] The sole issue before the jury was whether there had been a breach of an implied warranty of fitness for a particular purpose. The jury returned a verdict for the plaintiff in the amount of $7,500, and judgment was entered thereon. We granted the defendant an appeal.

On October 16, 1974, the plaintiff rented a 40-foot aluminum extension ladder from the defendant, who operated a paint store. The plaintiff, a general contractor and house painter for more than 35 years, had rented ladders and bought paint from the defendant for approximately 11 years. On the day of the rental, the defendant's daughter, an employee of the store, waited on the plaintiff. The plaintiff informed the defendant's daughter of the purpose for which the ladder would be used. After being shown several ladders, the plaintiff inspected the ladder selected by another of the defendant's employees and stated that it was "all right." The rental agreement was evidenced by a receipt, which provided that the ladder was rented "as is" at the rate of $4 per day. Attached to the ladder was a label specifying the proper angle at which the ladder should be

---

[1] Code § 8.2-315 provides: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section [§ 8.2-316] an implied warranty that the goods shall be fit for such purpose."

[2] Code § 8.2-316(2) provides that any disclaimer of an implied warranty of fitness must be "by a writing and [must be] conspicuous."

set and detailing other safety precautions. The plaintiff used the ladder without any problems for three days while painting the sides and rear of a house. While painting the front of the house on October 19, 1974, however, the plaintiff was injured when the ladder broke and he fell to the ground.

The crucial issue involved in this appeal is whether Virginia's Commercial Code § 8.2-315 is applicable to chattel leases. By giving a jury instruction[3] clearly based upon Code § 8.2-315, the trial court held that this code section was applicable to the lease involved in this case.

Code § 8.2-315, concerning implied warranty of fitness for a particular purpose, expressly refers to buyers and sellers. A "buyer" is defined as "a person who buys or contracts to buy goods," Code § 8.2-103(1)(a); a "seller" is "a person who sells or contracts to sell goods," Code § 8.2-103(1)(d). "A 'sale' consists in the passing of title from the seller to the buyer for a price." Code § 8.2-106(1). Furthermore, Code § 8.2-106(1) provides that "unless the context otherwise requires 'contract' and 'agreement' are limited to those relating to the present or future sale of goods." A literal reading of these Code sections thus indicates that the implied warranty of fitness for a particular purpose (Code § 8.2-315) applies to sales only, and not to bailments or chattel lease transactions. *See, e.g., DeKalb Agresearch, Inc.* v. *Abbott,* 391 F. Supp. 152 (N.D. Ala. 1974), *aff'd mem.,* 511 F.2d 1162 (5th Cir. 1975); *Mays* v. *Citizens & Southern National Bank,* 132 Ga. App. 602, 208 S.E.2d 614 (1974); *Bona v. Graefe,* 264 Md. 69, 285 A.2d 607, 48 A.L.R.3d 660 (1972).

The appellee has relied heavily upon Comment 2 to Code § 8.2-313, which notes that "the warranty sections of this Article [Article 2] are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined... to sales contracts." Even this Comment does not suggest, however, that the Uniform Commercial Code is applicable to non-sales transactions or that a common-law warranty concerning leases parallels the provisions of the Code. Indeed, the first clause of Comment 2 notes

---

[3] Instruction No. 6 provided that: "If you believe from a preponderance of the evidence that the defendant had reason to know the particular purpose for which the ladder was required, and that the plaintiff relied on defendant's skill or judgment to select or furnish a suitable ladder, there is an implied warranty or promise that the ladder shall be fit for such purpose. And if you further believe from such evidence that the defendant breached such implied warranty and that any such breach was a proximate cause of the plaintiff's injuries, then you shall find your verdict in favor of the plaintiff."

that "this section is limited in its scope and direct purpose to warranties made by the *seller* to the *buyer* as a part of a contract for *sale*." (Emphasis added.) Moreover, while Official Comments concerning the Uniform Commercial Code are frequently helpful in discerning legislative intent, they should not become devices for expanding the scope of Code sections where language within the sections themselves defies such an expansive interpretation.

Although we are aware of several cases in which the warranty provisions of the Uniform Commercial Code have been held applicable as to leases, *see* Annot., 48 A.L.R.3d 668 (1973), we note that most of these cases concern instances in which the lease contained an irrevocable option to buy. Since the rental agreement at issue in this case contained no such provision, these cases are of little value in resolving the issue before us.

When it enacted the Uniform Commercial Code, the General Assembly made several modifications in the language of the uniform act. We are unwilling to assume that the legislature was unaware of the limitations arising from the language used in the warranty sections. If the General Assembly had intended the warranty provisions of the Code to be applicable to leases, it could have changed the terms of these provisions. Since the legislature chose not to do so, we conclude that Code § 8.2-315 is inapplicable to chattel leases.[4]

For the reasons stated, the judgment of the court below is reversed and set aside, and final judgment is here entered for the defendant.

*Reversed and final judgment.*

COMPTON, J., dissenting.

I would affirm the decision below, applying the warranty provisions of Virginia's Uniform Commercial Code to a chattel lease.

---

[4] Even if Code § 8.2-315 were applicable, it is not clear that Meredith would be entitled to recover. Code § 8.2-316(3) provides that "notwithstanding" the provisions of § 8.2-316(2), which includes a requirement that warranty disclaimers be conspicuous, "all implied warranties are excluded by expressions like 'as is.'" It is not settled that disclaimers pursuant to Code § 8.2-316(3) must be conspicuous. *See* J. White & R. Summers, *Uniform Commercial Code* § 12-6 at 366 (1972).