## CIRCUIT COURT OF THE CITY OF RICHMOND

Spectrum Press, Inc.

v.

Troy Garrett,
t/a Stallion Graphics

September 26, 1996

Case No. LA-2956

BY JUDGE T. J. MARKOW

This matter is before the court on Defendant's Motion for Summary Judgment. Having heard argument from counsel of record and having considered the motions filed, the court grants the motion for summary judgment. Resolving all factual disputes in favor of the non-moving party, the court's analysis and opinion follows.

### Facts

The Plaintiff, Spectrum Press, Inc., is a Virginia Corporation engaged in the business of printing. The Defendant, Troy Garrett, is an individual engaged in the sale of equipment to printing companies. During November of 1991, Spectrum was approached by Garrett. Garrett solicited Spectrum to purchase certain printing and bindery equipment.

During the initial discussions between Garrett and Mark Zell, the President of Spectrum, Zell expressed a need for a collating machine which, among other things, could collate at least 1,500 booklets per hour and bind photocopies using a desired binding method. Garrett represented to Zell that the Horizon Collator (the Collator) could meet or exceed these requirements.

Garrett then installed the Collator at Spectrum for an initial test period of one month. During that period, Spectrum discovered that the Collator did not function at the rate represented by Garrett. Garrett was informed of this deficiency and repeated service calls were made by Garrett and Stallion Graphics. Garrett repeatedly assured Spectrum that continued service and adjustments would eventually bring the Collator in line with the promised specifications. As a result of these statements, Spectrum did not return the Collator before the end of the test period.

Instead, Spectrum contracted with United Leasing Company. United Leasing was to purchase the Collator from Garrett and then lease it to Spectrum. This transaction was completed. Repeated services by Garrett over the following year failed to cure the deficiency. Spectrum then informed Garrett that it was revoking its acceptance of the Collator. Garrett took no action. In the Summer of 1993, Spectrum sold the machine to another distributor.

Spectrum has since filed this suit, claiming Garrett's liability for its damages in four counts: (1) breach of contract, (2) breach of implied warranty of fitness for a particular purpose, (3) breach of implied warranty of merchantability, and (4) breach of express warranty. Garrett filed a grounds of defense and a motion for summary judgment. The court now considers the defendant's motion.

## Analysis

To determine whether to sustain a motion for summary judgment, the court must resolve all factual disputes in favor of the non-moving party, and, once this is done, if there remain no genuine issues of material fact for the court to resolve, and the moving party is entitled to judgment as a matter of law, the court shall then sustain the motion and enter judgment in favor of the moving party. *See* Rules of S. Ct. of Va. 3:18 & cmts.

Spectrum has pleaded its case in contract. In order for it to survive summary judgment, the facts must establish that a contract between Spectrum and Garrett exists or that Spectrum is able to claim as a third party beneficiary under an existing contract between Garrett and United Leasing. The court will address each of these alternatives separately.

### 1. *Was Spectrum a Party to the Contract?*

It is undisputed that Garrett did not sell the Collator directly to Spectrum. As Spectrum stated in its Motion for Judgment, United Leasing purchased the machine from Garrett and leased it to Spectrum.

In order to claim under the warranties alleged to have been made, Spectrum would have to be able to establish not just a contract, but a sales contract, under the Virginia Commercial Code (VCC). The VCC defines a "sale" as "the passing of title from the seller to the buyer for a price." Va. Code § 8.2-106(1). *See also Leake v. Meredith*, 221 Va. 14, 16 (1980); *Moore v. Allied Chemical Corp.*, 480 F. Supp. 364, 375 (E.D. Va. 1979).

Spectrum did not pay a price to Garrett and Garrett did not transfer title to Spectrum. Therefore, Garrett is not the seller, and Spectrum is not the buyer in a sales contract as recognized and defined by the VCC.

The VCC provides that an express warranty is created by an affirmation or promise "made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Va. Code § 8.2-313(1)(a). Since, in relation to each other, Garrett is not a seller and Spectrum is not a buyer, there can be no express warranty from or by Garrett to Spectrum.

A similar analysis applies to Spectrum's claims for breach of the implied warranties. These are warranties created by these same statutes. *See* Va. Code §§ 8.2-313 to 8.2-315. These warranties are imposed upon the seller for the benefit of the buyer. Since Spectrum is not a buyer, it enjoys no warranties. *See Moore*, 480 F. Supp. at 375 (claim for breach of implied warranties of merchantability and fitness under the VCC requires a sale to occur between the parties).

Spectrum does not establish there to be offer, acceptance, or consideration to support a contract between it and Garrett. As such, there is no genuine issue of material fact in dispute whether a sales contract existed. The court finds, as a matter of law, that a sales contract did not exist between Garrett and Spectrum.

The court now turns its attention to the alternative theory of recovery alleged by Spectrum.

## 2. *Is Spectrum a Third-Party Beneficiary to the Sales Contract Between Garrett and United Leasing?*

There are two bases on which Spectrum has attempted to claim that it is entitled to enforce the sales contract between Garrett and United Leasing. The first is through the common law notion of third-party beneficiary contracts combined with the statutes described above, and the second is through the finance lease statutes in the Virginia Code. The former was raised by Spectrum on brief and in response to interrogatories, and the later was raised by Spectrum during oral argument on this issue. It is not at all clear that the arrangement between the three actors here constitutes a

finance lease, as defined by statute. *See* Va. Code § 8.2A-103(g). For the purpose of this analysis, however, the court assumes that it does.

No matter which of the two enumerated theories of liability are employed, there is no genuine issue of material fact before the court. Simply put, for a third party to enforce its rights under a contract, there must be rights for them to enforce. The pleadings in this case are focused on warranties, both expressed and implied. Unless these warranties were made by Garrett to United Leasing in the sales contract from which this action derives, Spectrum cannot enforce them as they do not exist.

This is true under either theory. If a contracting party has no warranty rights under the contract, the party claiming through it is similarly bound. *See, e.g., Buettner v. R. W. Martin & Sons*, 47 F.3d 116, 118-19 (4th Cir. 1994); *Goodbar v. Whitehead Bros.*, 591 F. Supp. 552, 567 (W.D. Va. 1984), *aff'd sub nom. Beale v. Hardy*, 769 F.2d 213 (4th Cir. 1985). *See also Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 859 (1978) (third-party beneficiary bound by terms of contract and subject to all defenses arising out of contract).

This is equally true by the statutory authority which defines and uses the term "finance lease." Spectrum, in oral argument relied heavily on Va. Code § 8.2A-209. This provision extends the supplier's (Garrett) promises and warranties, originally made to the lessor (United Leasing), to the lessee (Spectrum). As the official comment makes clear, this code provision was designed to allow the lessee to enforce only those warranties made by the supplier to the lessor, not to create new warranties from representations made directly to the lessee. *See* Va. Code § 8.2A-209 cmt. 1. The comment goes on to say that if the supplier limits or disclaims the warranties made by itself to the lessor, the lessee is bound by this agreement between the parties. *See id.*

Consequently, unless Spectrum can show that warranties were made by Garrett to United Leasing in their contract of sale, Spectrum cannot enforce warranties against Garrett, even under a derivative claim. In answers to interrogatories propounded by Garrett asking for a complete description of each oral or written express warranty and each implied warranty under which Spectrum was claiming, Spectrum only listed those statements made directly by Garrett to Spectrum. *See* Plaintiff's Answers to Defendant's First Set of Interrogatories, Defendant's Exhibit 3. No mention was made of any warranties made by Garrett to United Leasing. *Id.* Spectrum cannot claim to have enforceable rights under a warranty which it does not

claim exists. As such, there is no genuine issue of material fact for this court to consider.

## Conclusion

There was no sales contract between Garrett and Spectrum under which Spectrum can assert a claim, and there were no warranties alleged to be in the sales contract between Garrett and United Leasing, through which Spectrum claims. As there is no genuine issue of material fact left for the court to consider, the court need not reach the merits of other arguments of the defendant for granting summary judgment. Therefore, the Motion for Summary Judgment is sustained and judgment is entered in favor of the defendant, Garrett.